Johnny Joe OLIVAREZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–03–01252–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 2, 2005.

Rehearing Overruled Aug. 18, 2005.

---

Michael R. De La Paz, San Antonio, TX, for appellant.

Kelly Ann Smith, Houston, TX, for appellee.

Panel consists of Chief Justice HEDGES and Justices FOWLER and SEYMORE.

## OPINION

SEYMORE, Justice.

A jury found appellant, Johnny Joe Olivarez, guilty of possession of a controlled substance and sentenced him to fifteen years' imprisonment. In six issues, appellant contends the trial court erred by (1) overruling his motion to suppress, (2) failing to grant a new trial because the State withheld exculpatory evidence, (3) failing to order disclosure of the identity of a confidential informant, and (4) failing to conduct a proper inquiry pursuant to Texas Rule of Evidence 508, concerning the disclosure of a confidential informant. We affirm.

## I. BACKGROUND

While conducting surveillance on a drug "stash" house, task force officers observed a Sears van and a black Grand Prix simultaneously pull up to the house. Several individuals transported three large, black duffel bags from the van into the house. Shortly thereafter, the officers saw the driver of the Grand Prix exit the house, place a box in the trunk of the Grand Prix, and drive away. The police conducted a traffic stop of the Grand Prix and obtained the driver's consent to search the car.[1] During the search, the officers recovered approximately ten pounds of marijuana from the box in the trunk.

Based on these events, the officers decided to approach the house to request consent to search. The officers approached the house and knocked on the door, which was opened by appellant. At that time, the officers could smell marijuana. The officers asked appellant if he lived there, and appellant stated that he rented the house. When the officers requested consent to search, appellant stepped outside, closed the door behind

---

1. The record does not indicate the basis for the traffic stop.

him, and refused to give consent. The officers then discussed their next course of action and decided to procure a search warrant.

Before issuance of the warrant, the officers knocked on the door to ascertain whether anyone else was inside. Abel Reyes and Juan Hernandez came to the door, and the officers explained that a search warrant for the house was being obtained. The officers then entered the house to determine whether any other individuals were present who could destroy evidence or pose a threat to the officers' safety. Upon entering the house, the officers saw marijuana on the table and scattered on the floor, but they did not seize any evidence. No other occupants were found inside.

While awaiting issuance of the warrant, appellant, Hernandez, and Reyes were handcuffed and placed on the couch. Although the officers remained in the residence, they did not conduct a search for narcotics until receiving notice that a warrant had been signed. When the search warrant had been signed, the officers commenced searching the house and found a key that unlocked a padlock on one of the bedroom doors. In the bedroom, the officers discovered three black duffel bags containing a large amount of marijuana.

## II. MOTION TO SUPPRESS

■ In his first three issues, appellant contends the trial court erred by denying his motion to suppress evidence in violation of the Fourth and Fourteenth Amendments of the United States Constitution, Article I, Section 9 of the Texas Constitution, and Article 38.23 of the Texas Code of Criminal Procedure.[2] We re-

view a trial court's ruling on a motion to suppress for abuse of discretion. *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex.Crim. App.1993). Accordingly, we must give great deference to the trial court's findings of historical facts as long as the record supports the findings, especially when the findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). We afford the same amount of deference to the trial court's ruling on "mixed questions of law and fact" when those issues turn on an evaluation of witnesses' credibility and demeanor. *Id.* Where rulings on "mixed questions of law and fact" do not turn on an evaluation of credibility and demeanor, we review the rulings *de novo. Id.* If the trial court's decision is correct on any theory of law applicable to the case, the decision must be sustained. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex.Crim.App.2000).

■ Warrantless searches and seizures inside a home are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). However, a warrantless entry into a home may be justified if (1) the police have probable cause, and (2) exigent circumstances exist that make procurement of a warrant impracticable. *McNairy v. State*, 835 S.W.2d 101, 106 (Tex.Crim.App. 1991). Exigent circumstances that may excuse an otherwise unconstitutional intrusion into a home include (1) the need to aid persons reasonably believed to require assistance, (2) the possible destruction of evidence, and (3) the need to protect officers or others from perceived danger. *Id.* at 107.

2. Appellant does not analyze, argue or provide authority to establish that his protection under the Texas Constitution exceeds or differs from that provided to him by the Federal Constitution. Therefore, we will not address appellant's state constitutional argument. *See Arnold v. State*, 873 S.W.2d 27, 33 (Tex.Crim. App.1993).

Here, appellant does not contest that the officers had probable cause to enter the house. Rather, appellant contends exigent circumstances did not justify the warrantless entry.[3] Alternatively, appellant maintains that any exigency to enter the house was created by the officers revealing themselves to appellant prior to obtaining a search warrant. *See United States v. Munoz–Guerra*, 788 F.2d 295, 298 (5th Cir.1986) (holding that officers cannot base a warrantless search on an exigent circumstance of their own creation).

Assuming, without deciding, that the warrantless entry into the house did constitute an illegal search, we nonetheless find that the trial court did not abuse its discretion by denying appellant's motion to suppress. Under the Fourth Amendment, evidence will not be excluded as "fruit of the poisonous tree" unless the alleged illegality is *at least* the "but for" cause of the discovery of the evidence. *State v. Guo*, 64 S.W.3d 662, 667 (Tex. App.—Houston [1st Dist.] 2001, no pet.). In other words, suppression of evidence is not required unless "the challenged evidence is in some sense the product of illegal governmental activity." *Segura v. United States*, 468 U.S. 796, 815, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) (quoting *United States v. Crews*, 445 U.S. 463, 471, 100

S.Ct. 1244, 63 L.Ed.2d 537 (1980)). In this case, the officers discovered 110 pounds of marijuana during a search pursuant to a warrant, the validity of which is not contested.[4] The record is clear that the officers decided to procure this search warrant before the initial entry into the house. Moreover, the record reflects that the probable cause relied upon to obtain the warrant was based on information gathered by the officers before the initial entry into the house. Therefore, the officers' initial entry into the house did not contribute in any way to the discovery of the marijuana appellant was charged with possessing. *Cf. Guo*, 64 S.W.3d at 668 (holding that where information obtained from illegal warrantless search of a briefcase was used to establish probable cause for the warrant to search briefcase, evidence obtained pursuant to the warrant was properly suppressed); *State v. Aguirre*, 5 S.W.3d 911, 914–15 (Tex.App.—Houston [14th Dist.] 1999, no pet.) (holding that because evidence supporting search warrant was illegally obtained, evidence recovered by executing warrant was fruit of the illegal search). Because the warrantless entry was not even the "but for" cause of the discovery of the marijuana, the trial court did not abuse its discretion by denying appellant's motion to suppress.[5]

3. Specifically, appellant contends that (1) the warrantless entry cannot be justified as a protective sweep incident to an arrest because no actual arrest was made until after the search, and (2) the warrantless entry was not necessary to prevent destruction of evidence because all of the occupants of the house were already detained when the officers entered.

4. The record reflects that upon the initial entry into the house, the officers did view marijuana that was scattered on the table and floor. However, it appears that all of the marijuana appellant was charged with possessing was discovered in three black duffel bags in a locked bedroom, which was only searched pursuant to the warrant. In any

event, appellant acknowledges in his brief that 110 pounds of marijuana, which is more than the 100.5 pounds that was actually introduced into evidence, was "discovered pursuant to the execution of the search warrant."

5. If the officers had not entered the house, appellant could have arranged for the removal or destruction of the marijuana, and in this sense the officers' entry could be considered a "but for" cause of the discovery of the evidence. However, the United Supreme Court has rejected this argument because there is no "constitutional right" to destroy evidence. *See Segura*, 468 U.S. at 816, 104 S.Ct. 3380.

We overrule appellant's first, second, and third issues.

## III. EXCULPATORY EVIDENCE

■■■■ In his fourth issue, appellant contends that the trial court erred by failing to grant a new trial because the prosecution withheld favorable, material evidence. When the prosecution withholds evidence favorable to the defendant, due process is violated when the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Wyatt v. State,* 23 S.W.3d 18, 27 (Tex.Crim.App.2000). However, there is no general right to discovery in a criminal case, and *Brady* does not create one. *See Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). To invoke *Brady,* the accused must present evidence that (1) the prosecution suppressed or withheld evidence, (2) this evidence was favorable to the accused, and (3) this evidence would have been material to the accused's defense. *Ex Parte Kimes,* 872 S.W.2d 700, 702–03 (Tex.Crim.App. 1993). Favorable evidence is material if there is a reasonable probability that had the evidence been disclosed to the defense, the outcome of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* The mere possibility that undisclosed evidence may have helped the defense or affected the trial's outcome does not establish "materiality" in the constitutional sense. *Hampton v. State,* 86 S.W.3d 603, 612 (Tex.Crim.App.2002). Whether the evidence is material is viewed in the con-

text of the overall strength of the State's case. *Id.* at 613.

During Agent Bruce Williford's testimony, he revealed that he had prepared a report that was not turned over to the prosecutor.[6] Although the report is not part of the appellate record, Agent Williford's testimony indicates that the report contains (1) the identity of the purchaser of utilities at the house where appellant was arrested, and (2) registration information on the Sears van parked at the house. Appellant contends this information is favorable because it tends to show that other individuals may be responsible for the "stash" house and the marijuana discovered there.

■■■■ When, as in the instant case, the alleged *Brady* material is discovered during trial, the inquiry is whether the defendant is prejudiced by the late disclosure. *Palmer v. State,* 902 S.W.2d 561, 565 (Tex.App.—Houston [1st Dist.] 1995, no pet.). If the defendant receives the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might or should have been. *Id.* (citing *United States v. McKinney,* 758 F.2d 1036, 1050 (5th Cir.1985)). After Agent Williford's report was disclosed at trial, appellant was permitted to cross-examine Agent Williford about the contents of the report. The jury was made fully aware that the utilities at the house were in the name of someone other than appellant and that the Sears van was registered to someone other than appellant. Therefore, appellant received the report in time to make effective use of it at trial. Nonetheless, appellant contends that the late disclosure of the report affected his ability to prepare a defense because, if the

---

6. Agent Williford testified that he did not turn the report over to the prosecutor because he did not believe it contained any pertinent in-formation that was not included in the Houston Police Department report.

report had been disclosed earlier, appellant could have investigated the facts of the report and discovered exculpatory evidence on the issue of actual care, custody, and control of the house. However, the mere possibility that appellant could have discovered more information concerning care, custody, and control of the house is not sufficient to undermine confidence in the outcome of the proceeding.

■■■■■ To obtain appellant's conviction for unlawful possession of a controlled substance, the State was required to prove that appellant (1) exercised care, control and management over the contraband, and (2) knew that the substance possessed was contraband. *Deshong v. State,* 625 S.W.2d 327, 329 (Tex.Crim.App.1981). When the accused is not in exclusive possession of the place where the contraband is found, the State must show additional affirmative links between the accused and the contraband. *Cedano v. State,* 24 S.W.3d 406, 411 (Tex.App.—Houston [1st Dist.] 2000, no pet.). An affirmative link generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it. *Johnson v. State,* 658 S.W.2d 623, 627 (Tex.Crim.App.1983). Some relevant factors that may affirmatively link an accused to contraband include: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view, (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Washington v. State,* 902 S.W.2d 649, 652 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd); *Chavez v. State,* 769 S.W.2d 284, 288–89 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). The number of linking factors present is not as important as the "logical force" they create to prove the crime was committed. *Gilbert v. State,* 874 S.W.2d 290, 298 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).

In this case, appellant clearly demonstrated his right to possess the house by informing the officers that he rented the house when they requested consent to search. *See Edwards v. State,* 813 S.W.2d 572, 576–78 (Tex.App.—Dallas 1991, pet. ref'd) (holding that statements by defendant, and apartment manager, that defendant lived in the apartment where drugs were found demonstrated his control over the apartment, even though no documents, personal effects or keys were found). Additionally, appellant exercised control over the house by excluding the officers when they asked for consent to search. Therefore, appellant was affirmatively linked to the house despite the fact that other individuals may have had an interest in the house.

In addition to appellant's control over the house, there are a substantial number of other facts and circumstances that affirmatively link appellant to the marijuana including (1) appellant's presence when the house was searched, (2) marijuana being scattered throughout the house in plain view, (3) materials for packaging and weighing drugs being scattered throughout

the house, (4) a strong odor of marijuana emanating from the house, (5) appellant's demonstrating a consciousness of guilt by stepping outside and closing the door when the officers requested consent to search, and (6) the large quantity of marijuana present, which indicated appellant had knowledge of the marijuana.

After considering the evidence that demonstrates appellant's control over the house, and the evidence that affirmatively links appellant to the marijuana, we conclude that appellant has failed show that there is a reasonable probability the outcome of the trial would have been different had the report been disclosed earlier.[7]

We overrule appellant's fourth issue.

## IV. CONFIDENTIAL INFORMANT

### A. Disclosure of Identity

■■■■■ In his fifth issue, appellant contends that the trial court erred by not requiring the State to disclose the identity of a confidential informant. In determining whether the trial court erred by not requiring the State to disclose an informant's identity, we must consider all of the circumstances of the case. *Edwards*, 813 S.W.2d at 580. We review the trial court's decision for an abuse of discretion. *See Cannon v. State*, 807 S.W.2d 631, 633 (Tex. App.—Houston [14th Dist.] 1991, no pet.).

■■■■■ The State has the privilege to refuse to disclose an informant's identity. TEX. R. EVID. 508(a). However, if it appears from the evidence in the case or from some other showing that an informant may be able to give testimony necessary to a fair determination of guilt or innocence, "the court shall give the public entity an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony." TEX. R. EVID. 508(c)(2). Under Rule 508, the defendant has the burden to make a plausible showing that an informant could give testimony necessary to a fair determination of guilt or innocence. *Bodin v. State*, 807 S.W.2d 313, 318 (Tex. Crim.App.1991). The defendant is required to make only a plausible showing of how the informant's information may be important. *See Anderson v. State*, 817 S.W.2d 69, 71 (Tex.Crim.App.1991). However, the defendant must demonstrate the informant's potential testimony would significantly aid the defendant and mere conjecture or supposition about possible relevancy is insufficient. *Brokenberry v. State*, 853 S.W.2d 145, 148 (Tex.App.— Houston [14th Dist.] 1993, pet. ref'd). Only after the defendant makes a plausible showing is the trial court is required to hold an *in camera* hearing to determine whether disclosure is necessary. *Id.*

During trial, Agent Williford testified that he had received information from a confidential informant that a Sears van was involved in drug trafficking and that this information led the officers to begin surveillance on the house where appellant was arrested. Later, at a hearing outside the presence of the jury, Agent Williford testified that the confidential informant was not present on the day appellant was arrested for possession of marijuana. However, during the hearing, the trial court prohibited appellant's counsel from asking any further questions about the confidential informant. Appellant argues that, although the trial court limited his ability to determine the extent to which the confidential informant possessed relevant information, he nevertheless made a

---

7. Appellant also contends that the report could have been used for impeachment purposes. However, appellant fails to explain how the report constitutes impeachment evidence.

plausible showing the informant's testimony was necessary for a fair determination of guilt or innocence. We disagree.

First, appellant argues that the informant's testimony was necessary to a fair determination of guilt or innocence because the informant could testify regarding the method by which narcotics were being distributed from the house. As previously discussed, to obtain appellant's conviction for unlawful possession of a controlled substance, the State was required to prove that appellant (1) exercised care, control and management over the contraband, and (2) knew the substance possessed was contraband. *Deshong*, 625 S.W.2d at 329. Thus, the relevant inquiry in this case is whether appellant was exercising care, control and management over the marijuana at the time of his arrest. We are unable to conclude that the method by which narcotics were being distributed from the house would be necessary for determining appellant's guilt for the charged offense. Consequently, the trial court did not err in refusing to order disclosure of the informant based on the first ground asserted by appellant.

Next, appellant contends that the informant's testimony was necessary to a fair determination of guilt or innocence because the informant could testify regarding information about the house itself. Nevertheless, appellant does not provide supporting argument as to why information about the house itself would be necessary for a fair determination of guilt or innocence. We observe that in appellant's motion for disclosure of the confidential informant, appellant argued that the informant can "testify that [appellant] had no ownership or control over the premises . . . ." However, this allegation is nothing more than mere conjecture and speculation and, thus, is insufficient to merit an *in camera* hearing, much less require the tri-

al court to order disclosure of the informant's identity. *See Patterson v. State*, 138 S.W.3d 643, 648–49 (Tex.App.—Dallas 2004, no pet.) (holding that defendant's argument that the informant could have identified other occupants of residence who "could have been responsible for the contraband" was nothing more than mere conjecture or supposition unsupported by any evidence and, thus, defendant failed to make a plausible showing of how the informant's testimony was important).

We conclude that appellant failed to meet his burden to demonstrate why the informant's identity should be disclosed, and therefore, the trial court did not err in refusing to order disclosure of the confidential informant. We overrule appellant's fifth issue.

**B. Hearing did not violate Rule 508**

 In his sixth issue, appellant contends that the trial court erred by failing to conduct a proper inquiry pursuant to Texas Rule of Evidence 508, concerning the disclosure of the identity of the informant. Rule 508 provides that once the defendant makes a plausible showing that an informer may be able to give testimony necessary to a fair determination of guilt or innocence, "the court shall give the public entity an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony." TEX. R. EVID. 508(c)(2).

In this case, after appellant sought disclosure of the confidential informant, the trial court conducted a hearing, outside the presence of the jury, during which appellant's counsel questioned Agent Williford about the confidential informant. Appellant's counsel was permitted to ask whether the informant was present at the time appellant was arrested. However, the trial court sustained unspecified objections

by the State when appellant's counsel asked additional questions about the informant. Relying on *Heard v. State*, 995 S.W.2d 317 (Tex.App.—Corpus Christi 1999, pet. ref'd), appellant contends that the trial court violated Rule 508 by (1) failing to conduct this hearing *in camera*, and (2) limiting the scope of the questions appellant's counsel was permitted to ask.

In *Heard*, the appellant was charged with murder. *Id.* at 318. The appellant filed a motion for disclosure of the identity of the confidential informant, "arguing that the murder weapon was hidden in an obscure location, and the informer's knowledge of its whereabouts suggested that the informer was present when the weapon was disposed." *Id.* at 320. The trial court conducted a hearing on the motion in open court. *Id.* However, in order to protect the informant's identity, the trial court limited appellant's counsel to inquiring whether or not there was an informant, whether or not the informant was present at the scene, and whether or not the informant was a material witness to the transaction itself. *Id.* at 321. On appeal, the *Heard* court held that the trial court erred by failing to conduct an *in camera* hearing. *Id.* The *Heard* court also noted that by limiting the scope of the appellant's counsel's questions, the trial court had precluded the appellant from conducting a meaningful investigation into whether the informant's identity should be disclosed. *Id.*

The facts of this case are distinguishable from *Heard*. In *Heard*, the trial court was required to conduct an *in camera* hearing pursuant to Rule 508 because the appellant had made a plausible showing of how the

informant's testimony was important. Conversely, in this case, appellant did not make a plausible showing that the informant's testimony was important. Because appellant had not met this threshold burden, the trial court was not required to conduct an *in camera* hearing.[8]

Moreover, nothing in Rule 508 precludes a trial court from conducting an evidentiary hearing in open court to allow the defendant to question the State's witness regarding the informant's identity. *See* TEX. R. EVID. 508. Allowing defense counsel to ask preliminary questions concerning a confidential informant may often be necessary to help a defendant meet his threshold burden of demonstrating that an *in camera* review is warranted. Accordingly, under the facts of this case, the trial court's decision to hold an open court hearing did not violate Rule 508. Further, we are unable to conclude that the trial court's limitation on the scope of the questions violated any of the provisions of Rule 508.

We overrule appellant's sixth issue. Accordingly, the judgment of the trial court is affirmed.

---

**8.** Appellant also relies on *Lary v. State*, in which the trial court failed to conduct an *in camera* hearing. 15 S.W.3d 581, 584–85 (Tex.App.—Amarillo 2000, pet. ref'd). However, that case is also distinguishable because the appellant made a threshold showing that the informant would have been able to give testimony necessary for a fair determination of guilt or innocence because the appellant's identity was in issue, and the informant was an eyewitness to the offense. *Id.*