

# NUMBER 13-07-00329-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**TAURINO ALBERTO ALVAREZ,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                          **Appellee.**

**On appeal from the 156th District Court of Live Oak County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Memorandum Opinion by Justice Garza**

Appellant, Taurino Alberto Alvarez, was charged by indictment with intentionally or knowingly possessing a controlled substance—cocaine—while in a correctional facility. *See* TEX. PENAL CODE ANN. § 38.11(d) (Vernon Supp. 2007); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.002(29) (Vernon Supp. 2007) (providing that cocaine is a "narcotic drug" within the context of the Texas Controlled Substances Act). After finding

appellant guilty, the jury assessed punishment at fifteen years' confinement in the Texas Department of Corrections and imposed a $5,000.00 fine. By three issues, appellant contends that: (1) the evidence is legally and factually insufficient to support his conviction; (2) the prosecutor made an improper comment on his failure to testify; and (3) there was no evidence adduced at trial that the Live Oak County Sheriff's Department is a correctional facility. We affirm.

## I. FACTUAL BACKGROUND

The charges against appellant stemmed from a traffic stop and the subsequent arrest and confinement of appellant at the Live Oak County Sheriff's Department on April 26, 2006.

### a. Trooper Richard Russell's Testimony

Trooper Richard Russell testified that he stopped appellant for driving sixty-five miles per hour in a fifty-five mile per hour zone. After making the stop, Trooper Russell ran a records check on appellant and was advised that appellant had two outstanding warrants for his arrest. Moreover, Trooper Russell performed a series of sobriety tests on appellant because he smelled of alcohol and appellant admitted to have been drinking alcoholic beverages earlier. Trooper Russell noted that appellant was extremely nice and cooperative prior to arriving at the sheriff's department.

Trooper Russell subsequently conducted a "pat down" search of appellant's outer clothes for weapons. Trooper Russell testified that he did not check appellant's boots because it would have been unsafe to do so alone on the side of the highway.

Appellant was placed under arrest and was transported to the Live Oak County

2

Sheriff's Office where we was placed in booking room #2 which contained an intoxilyzer, a metal table with two chairs that faced each other, and a filing cabinet in one corner of the room. Trooper Russell testified that he could see "just about everything on the floor" of the booking room and that there was nothing on the floor when appellant entered the room.

Once in the booking room, Trooper Russell noted that appellant began to act unusual. He refused to take a breath test and repeatedly asked to use the restroom. Because appellant had not been fully searched at this time, Deputy Ken Baker escorted him to the restroom to ensure that appellant did not attempt to destroy evidence. Appellant's restroom request seemed peculiar to Trooper Russell because of the repetitive and insistent nature in which he asked.

Deputy Baker returned appellant to the booking room and Trooper Russell himself went to use the restroom. Trooper Russell testified that Deputy Baker and the other jailers stayed with appellant in booking room #2 while he used the restroom. Upon returning from the restroom, Trooper Russell testified that appellant was bent over "like he was scratching at his knee or scratching his ankle." Trooper Russell further stated that shortly thereafter he saw a baggie on the floor, four to six inches from appellant's right foot. Trooper Russell immediately picked up the baggie and performed a field test on the contents of the baggie, which yielded a positive identification for cocaine.[1] Once he seized the baggie, Trooper Russell stated that appellant became irate; appellant cursed and repeatedly denied that the baggie was his. Finally, Trooper Russell testified that it is not common procedure to test for fingerprints on an item of evidence that an officer has already handled.

---

[1] The State's witness, Efrain Perez, a forensic scientist with the Department of Public Safety Crime Lab, testified that he analyzed the baggie and concluded that it contained 6.55 grams of cocaine.

3

**b. Deputy Ken Baker's Testimony**

Deputy Baker testified that he was working at the Live Oak County Sheriff's Office on the night of appellant's arrest, and that he witnessed Trooper Russell escorting appellant into the booking room. Deputy Baker further noted that he observed nothing on the floor of the booking room at the time appellant was escorted to the room. Deputy Baker testified that Trooper Russell asked him to escort appellant to the restroom. While in the restroom, Deputy Baker noticed that appellant approached the urinal, acted like he unzipped his pants, looked over his shoulder to see him standing in the doorway, immediately acted as if he was zipping up his pants, and then said he was finished. Deputy Baker noted that he believed that appellant did not like his presence in the doorway because it kept him from doing what he really wanted to do. Deputy Baker stated that he did not hear or see appellant actually use the restroom. Deputy Baker then escorted appellant back to the booking room and released him to the jailers. Once again, Deputy Baker did not notice anything on the floor of the booking room. Finally, Deputy Baker testified that no other inmates were brought into the booking room while appellant was in booking room #2 or in the restroom.

**c. Rudolfo Garcia's Testimony**

Rudolfo Garcia testified that he was employed as a jailer at the Live Oak County Sheriff's Office on the night of appellant's arrest. Garcia noted that the jailers are responsible for the upkeep of the booking rooms and that before anyone enters the booking room, the jailers make sure nothing is left inside the room. Garcia further stated that appellant was the first inmate taken inside the booking room that night and that he did

4

not observe anything on the floor of the room when Trooper Russell escorted appellant to the room.

### d. Pablo Villafranca's Testimony

Pablo Villafranca testified that he was a jailer at the Live Oak County Sheriff's Office on the night of appellant's arrest. Villafranca corroborated Garcia's testimony that there were no items on the floor of the booking room other than the cabinet, table, and chairs. Villafranca noted that the Live Oak County Sheriff's Office is a secured correctional facility and that once individuals are escorted inside the building, they are not free to leave.

## II. PROCEDURAL BACKGROUND

Appellant was indicted for intentionally or knowingly possessing a controlled substance—cocaine—while in a correctional facility on December 7, 2006. Also contained in the indictment was an enhancement paragraph which noted that appellant had been convicted previously—on December 12, 1990—of the felony offense of burglary of a habitation. On January 8, 2007, appellant filed a motion to suppress evidence of the seized contraband. The trial court, however, denied appellant's motion after a hearing on April 23, 2007.

After a jury trial on May 16, 2007, appellant was found guilty. Appellant elected to have the jury assess his punishment. The jury subsequently assessed punishment at fifteen years' confinement in the Texas Department of Corrections and imposed a $5,000.00 fine. Also on May 16, 2007, the trial court certified that appellant's case was not a plea bargain case and that he had the right to appeal his conviction.

Appellant filed his notice of appeal, motion to appoint counsel to handle his appeal,

and a motion for bond on May 16, 2007; the trial court denied appellant's motion for bond. On June 7, 2007, appellant filed a motion for new trial and a motion in arrest of judgment, asserting that: (1) the verdict was contrary to the law and evidence, *see* TEX. R. APP. P. 21.3(h); (2) juror misconduct occurred after the jury was selected and seated; (3) the State intentionally, knowingly, or recklessly destroyed exculpatory evidence; and (4) the trial court committed material error by failing to grant a mistrial upon a showing that the State did not comply with his written requests pertaining to the State's introduction of his prior conviction.

The trial court denied appellant's motion for new trial and motion in arrest of judgment after a hearing on July 5, 2007. This appeal ensued.

### III. STANDARD OF REVIEW

### a. Legal Sufficiency Review

In a legal sufficiency review, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Watson v. State*, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006). The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Jackson*, 443 U.S. at 318-39; *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). We do not reevaluate the weight and credibility of the evidence, whether circumstantial or direct, nor do we substitute our own judgment for that of the trier of fact. *Mosley v. State*, 141 S.W.3d 816, 821 (Tex. App.–Texarkana 2004, pet. ref'd); *Beckham*, 29 S.W.3d at 151. Instead, we consider whether the jury reached a rational decision.

6

*Beckham*, 29 S.W.3d at 151.

Moreover, in a legal sufficiency review, each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor; circumstantial evidence alone can be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). On appeal, both circumstantial and direct evidence cases are examined using the same standard of review. *Id.*

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). "Such a charge would accurately set out the law, would be authorized by the indictment, and would not unnecessarily increase the State's burden of proof." *Malik*, 953 S.W.2d at 240. The elements of the charged offense in this case are: (1) appellant possessed (2) a controlled substance or dangerous drug (3) in a correctional facility. *See* Tex. Penal Code Ann. § 38.11(d); *see also* Tex. Health & Safety Code Ann. § 481.002(29). A successful legal sufficiency challenge will result in the rendition of an acquittal by the reviewing court. *Adi*, 94 S.W.3d at 128 (citing *Tibbs v. Florida*, 457 U.S. 31, 41-42 (1982)).

**b. Factual Sufficiency Review**

In a factual sufficiency review, we review the evidence in a neutral light to determine whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust. *Watson*, 204 S.W.3d at 414-15. After considering all of the evidence in the record related to appellant's sufficiency challenge, we compare the evidence weighed by the jury that tends to prove the elemental fact in dispute with the evidence that tends to disprove it. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997) (en banc). This Court will not reverse the jury's verdict unless we can say with some objective basis in the record that the great weight and preponderance of the evidence contradicts the verdict. *Watson*, 204 S.W.3d at 415.

## IV. ANALYSIS

## A. Possession of a Controlled Substance

In his first issue on appeal, appellant contends that the evidence is legally and factually insufficient to establish "an affirmative link that [a]ppellant was in actual care, custody or control of the controlled substance." In essence, appellant challenges solely the sufficiency of the evidence as to possession of the controlled substance. Conversely, the State argues that "[t]he number of 'links' between the accused and the contraband in question is not determinative[;] rather[,] it is the cumulative and logical force of the circumstances which determines whether the evidence is sufficient to demonstrate the element of possession." As such, the State asserts that the evidence is legally and factually sufficient to establish the element of possession.

In arguing that there was insufficient evidence that the controlled substance found

8

on the floor of booking room #2 was not in his "actual care, custody, or control," *see* TEX.

PENAL CODE ANN. § 1.07(a)(39) (Vernon Supp. 2007), appellant cites to the court of

criminal appeals' decision in *Evans v. State*, 202 S.W.3d 138 (Tex. Crim. App. 2006). In

*Evans*, the court of criminal appeals noted that in a possession of a controlled substance

prosecution, the State must prove: "(1) the accused exercised control, management, or

care over the substance; and (2) the accused knew the matter possessed was

contraband." *Id.* at 161. In articulating the "links" rule,[2] the *Evans* court stated that:

> Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous. This is the so-called "affirmative links" rule which protects the innocent bystander—a relative, friend, or even stranger to the actual possessor—from conviction merely because of his fortuitous proximity to someone else's drugs. Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs. However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., "links"), may well be sufficient to establish that element beyond a reasonable doubt. It is . . . not the number of links that is dispositive , but rather the logical force of all of the evidence, direct and circumstantial.

*Id.* at 161-62 (citations omitted). The court further noted that Texas courts have

recognized a non-exclusive list of possible "links" as sufficient, "either singly or in

combination, to establish a person's possession of contraband." *Id.* at 162 n.12 (citing

*Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.–Houston [14th Dist.] 2005, no pet.)).

The list includes the following factors:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the

---

[2] The rule was previously referred to as the "affirmative links rule," but the court of criminal appeals in *Evans v. State*, noted that "affirmative" adds nothing to the plain meaning of "link." 202 S.W.3d 138, 162 n.9 (Tex. Crim. App. 2006). Therefore, the court of criminal appeals now refers to the "links," as opposed to "affirmative links." *Id.*

influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* (citing *Olivarez*, 171 S.W.3d at 291). Finally, the court intimated that these are just "some factors which may circumstantially establish the legal sufficiency of the evidence to prove a knowing 'possession.' They are not a litmus test." *Id.*

Appellant argues that of the fourteen factors intimated by the court of criminal appeals, "4 out of the 14 were present . . . 8 out of 14 factors were not present at all. So basically[,] only 35% of the factors enumerated by the [c]ourt of [c]riminal [a]ppeals were shown by the evidence to have existed." Appellant, however, has misapplied the "links" rule as described by *Evans*.

As previously mentioned, it is "not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Id.* at 162. The record reflects that appellant was arrested and taken to the Live Oak County Sheriff's Department for an intoxilyzer test. The testimony of Trooper Russell, Deputy Baker, Garcia, and Villafranca established that there was nothing on the floor of booking room # 2 prior to appellant's occupation of the room. Trooper Russell's testimony demonstrated that appellant made furtive gestures in scratching his ankle and that shortly thereafter a baggie containing cocaine was found within four to six inches of appellant's right foot. Trooper Russell also commented on appellant's insistent requests to use the restroom immediately

10

upon arriving at the sheriff's department. He noted the change in appellant's demeanor from friendly to belligerent once the baggie was discovered.

Deputy Baker also testified that appellant made furtive gestures in the restroom by acting like he had used the restroom when he really had not. Deputy Baker believed that appellant desired to destroy the cocaine by flushing it down the toilet but was reluctant to do so considering his presence in the doorway. Perez's testimony established that the baggie contained 6.55 grams of cocaine. Garcia and Villafranca testified that booking room #2 was only occupied by appellant, that the Live Oak County Sheriff's Department is a secured correctional facility, and that appellant was not free to leave. Clearly, appellant's connection with the cocaine was more than fortuitous. Therefore, the "logical force of the evidence" supports the premise that appellant possessed the cocaine while detained in booking room #2 of the Live Oak County Sheriff's Department, a correctional facility. We conclude that the evidence presented at trial is legally sufficient to support appellant's conviction. We further conclude that, with respect to appellant's factual sufficiency contention, the jury's verdict is not against the great weight and preponderance of the evidence as to be clearly wrong or unjust. *See Watson*, 204 S.W.3d at 414-15. Accordingly, we overrule appellant's first issue.

## B. Comments on Appellant's Refusal to Testify

By his second issue, appellant contends that "[t]he prosecutor made an improper comment on the [a]ppellant's failure to testify." This issue was mentioned in the "POINTS OF ERROR" section of appellant's brief, but was not mentioned again in the brief. The remainder of appellant's brief does not contain any argument, authority, or citation to the

record regarding this issue. We therefore conclude that appellant has inadequately briefed and therefore waived this issue. *See* TEX. R. APP. P. 38.1(h). Accordingly, we overrule appellant's second issue.

## C. The "Correctional Facility"

In his third issue on appeal, appellant asserts that no evidence was presented at trial to establish an essential element of the indictment—that the Live Oak County Sheriff's Office is a correctional facility within the definition provided by section 1.07 of the penal code. *See* TEX. PENAL CODE ANN. § 1.07(a)(14). Essentially, appellant contends that the evidence is legally insufficient to demonstrate that a controlled substance was possessed in a "correctional facility." The State counters by arguing that the testimony of Villafranca established that the Live Oak County Sheriff's Office was a correctional facility within the definition provided by section 1.07 of the penal code. *See id.*

## 1. Applicable Law

Section 1.07(a)(14) of the penal code provides that a "correctional facility" is:

*a place designated by law for the confinement of a person arrested for, charged with, or convicted of a criminal offense.* The term includes: (A) a municipal or county jail; (B) a confinement facility operated by the Texas Department of Criminal Justice; (C) a confinement facility operated under contract with any division of the Texas Department of Criminal Justice; and (D) a community corrections facility operated by a community supervision and corrections department.

*Id.* (emphasis added).[3]

## 2. Discussion

---

[3] We note that the jury charge contained the following definition for a "correctional facility": "'[c]orrectional facility' means a place designated by law for the confinement of a person arrested for, charged with, or convicted of a criminal offense. The term includes a county jail."

The record contains the testimony of Villafranca who stated the following upon questioning by the State:

Q:      Now, Live Oak County Sheriff's Department, once an individual is in there and they're under arrest, are they free to leave?

A:      No, mam.

Q:      Is it a secured correctional facility?

A:      Yes, ma'am.

Appellant argues that:  (1) the facility was not a jail in the traditional sense; (2) the Live Oak County Sheriff's Department is part of the Live Oak County Courthouse and the jail is not part of or adjacent to the building containing the sheriff's department; and (3) appellant was not confined given that he was not "locked up behind bars."  We disagree.

As previously mentioned, the record demonstrates that appellant was under arrest and was not free to leave the Live Oak County Sheriff's Department.  In fact, appellant was confined within the Live Oak County Sheriff's Department building for an intoxilyzer test after his arrest for speeding and suspicion of driving while intoxicated.

"Confinement" is not defined in the penal code, but we do not construe "confinement" to mean that appellant was required to be "locked up behind bars" or required to wear an orange jumpsuit.  *See Campos v. State*, 623 S.W.2d 657, 658 (Tex. Crim. App. 1981) (holding that when words in a criminal statute are not defined, the words employed are given their plain meaning).  We find that any restriction of one's liberty afforded by law constitutes a "confinement."  *See* BLACK'S LAW DICTIONARY 240 (7th ed. 2000) (defining "confinement" as "[t]he act of imprisoning or restraining someone . . . ."); *Scott v. State*, 672 S.W.2d 465, 466 (Tex. Crim. App. 1984) (defining the term "confine,"

with respect to the offense of escape, as "to keep within bounds or imprison"); *see also* TEX. PENAL CODE ANN. § 1.05(a)-(b) (Vernon 2003) (noting that the code "shall be construed according to the fair import of their terms, to promote justice and effect the objective of the code" and that section 311.011 applies to the construction of the penal code); TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998) (words shall be construed according to the rules of grammar and common usage). Because he was not free to leave the facility, appellant was, therefore, confined within the meaning of section 1.07(a)(14) of the penal code. TEX. PENAL CODE ANN. § 1.07(a)(14).

Given Villafranca's testimony that the facility is a secured correctional facility and the fact that appellant was under arrest and was not free to leave, we conclude that the evidence is legally sufficient to establish that the Live Oak County Sheriff's Department was a "correctional facility" as contemplated by section 1.07(a)(14) of the penal code. *See id.* Accordingly, we overrule appellant's third issue.

### IV. CONCLUSION

Having overruled all of appellant's issues, we affirm.

_____
DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX.R.APP.P. 47.2(b)
Memorandum Opinion delivered and
filed this the 29th day of May, 2008.

14