NO.
12-10-00136-CR

                  

IN THE COURT OF
APPEALS 

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

RUDOLPH
TOMMY GILLIAM,                      §                 APPEAL FROM THE 7TH

APPELLANT

 

V.                                                                         §                 JUDICIAL
DISTRICT COURT

 

THE STATE OF TEXAS,

APPELLEE                                                        §                 SMITH
COUNTY, TEXAS

                                                        
                                           

MEMORANDUM OPINION

Rudolph
Gilliam appeals the revocation of his community supervision.  In his sole
issue, Appellant argues that the evidence is insufficient to support the trial
court’s revocation order.  We affirm.

 

Background

Appellant
was charged by indictment with the offense of aggravated robbery.  He pleaded
guilty pursuant to a plea agreement, and the trial court placed him on deferred
adjudication community supervision for eight years.

On
November 3, 2009, Tyler police officer Jeff Roberts stopped a vehicle for
failing to have a license plate light.  Appellant was seated on the passenger
side of the vehicle and a female, Patricia Daniel, was seated on the driver’s
side.  After marijuana was discovered in the center console of the vehicle,
Appellant was placed under arrest and taken to the Smith County Jail.  Subsequently,
the State filed an application to proceed to final adjudication.  In its second
amended application, the State alleged that Appellant violated five conditions
of his community supervision by (1) possessing a usable quantity of marijuana
in an amount more than two ounces but less than four ounces; (2) operating a
motor vehicle when his license was suspended; (3) associating with a person
convicted of prostitution; (4) possessing marijuana; and (5) failing to
participate in the state drug or alcohol abuse continuum of care treatment
plan. Appellant pleaded “not true” to the allegations in the State’s motion to
adjudicate.

After
an evidentiary hearing, the trial court found that Appellant committed the
first four violations. Accordingly, the trial court adjudicated Appellant
guilty and assessed punishment of imprisonment for fifteen years.  This appeal
followed.

 

Revocation
of Community Supervision

 

In
his sole issue, Appellant argues that the evidence is insufficient to support
revocation of his community supervision.  

Standard
of Review

We
review a trial court’s order revoking community supervision under an abuse of
discretion standard.  See Rickels v. State, 202 S.W.3d 759, 763
(Tex. Crim. App. 2006).  In a community supervision revocation proceeding, the
state has the burden of proving a violation of the terms of community
supervision by a preponderance of the evidence.  See Rickels, 202
S.W.3d at 763-64; Cobb v. State, 851 S.W.2d 871, 873 (Tex. Crim.
App. 1993).  The state meets its burden when the greater weight of the credible
evidence creates a reasonable belief that the defendant violated a condition of
community supervision as alleged.  See Rickels, 202 S.W.3d at
764; Jenkins v. State, 740 S.W.2d 435, 437 (Tex. Crim. App.
1983).  In a hearing on a motion to revoke community supervision, the trial
court is the sole trier of fact, and is also the judge of the credibility of
the witnesses and the weight to be given their testimony. Taylor v. State,
604 S.W.2d 175, 179 (Tex. Crim. App. 1980); Trevino v. State, 218
S.W.3d 234, 240 (Tex. App.–Houston [14th Dist.] 2007, no pet.).  Furthermore,
on appeal, we examine the evidence in the light most favorable to the trial
court's ruling. Garrett v. State, 619 S.W.2d 172, 174
(Tex. Crim. App. [Panel Op.] 1981); Duncan v. State, 321 S.W.3d
53, 57 (Tex. App. –Houston [1st Dist.] 2010, pet ref’d). One single violation
of the terms of community supervision is sufficient to support a trial court’s
order revoking community supervision. Sanchez v. State, 603
S.W.2d 869, 871 (Tex. Crim. App. 1980); Moore v. State, 605
S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980) (stating that one sufficient
ground for revocation is enough to support trial court’s decision); Cochran
v. State, 78 S.W.3d 20, 28 (Tex. App.–Tyler 2002, no pet.).

 

Applicable
Law

In
its application in this case, the State alleged two different violations for
possession of marijuana. The first was that Appellant, by possessing “a usable
quantity of marijuana in an amount of four ounces or less but more than two ounces,”
violated the condition that he “commit no offense against the laws of this
state or of any other state or the United States.” The second was that
Appellant, by possessing marijuana, violated the condition that he “not use,
consume, nor possess marijuana, any narcotic substance, controlled substance,
or dangerous drug at any time except as prescribed by a medical doctor and
taken in accordance with the medical doctor’s prescription.” Case law has
established two different categories of violations: “new offense or new crime”
violations and “technical” violations.  Coffel v. State, 242
S.W.3d 907, 909 (Tex. App.–Texarkana 2007, no pet.). New offense violations
involve the defendant’s alleged criminal violation of Texas law. Id.
Technical violations involve other conditions that have nothing to do with
obeying “the laws of this state or of any other State or of the United States.”
Id. (quoting Tex. Code
Crim. Proc. Ann. art. 42.12 §11(a)(1) (Vernon Supp. 2007)). Here, we
will address only the second marijuana allegation, “simple possession,” which
does not relate to whether Appellant violated the law.[1]

The
sufficiency of the evidence necessary to establish simple possession is
analyzed under the same rules used in addressing the possession element of the
criminal offense of possession of a controlled substance. See Evans
v. State, 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006) (analyzing
simple possession of controlled substance).  To prove possession of a
controlled substance, the state must show (1) that the accused exercised care,
control, or custody over the substance, and (2) that the accused knew he
possessed a controlled substance. Id. at 161; Brown v.
State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). When the accused is
not in exclusive possession of the place where the substance is found, the
state must show additional independent facts and circumstances that link the
accused to the contraband in order to conclude that the accused had knowledge
and control of the contraband. Poindexter v. State, 153 S.W.3d
402, 406 (Tex. Crim. App. 2005). This “links” rule is not an independent test
of legal sufficiency; it is merely a shorthand catch-phrase for a large variety
of circumstantial evidence that may establish the knowing “possession” or
“control, management, or care” of the contraband.  Evans, 202
S.W.3d at 162 n.9. 

A
nonexclusive list of factors that have been found to be sufficient, either
singly or in combination, to establish the legal sufficiency of the evidence to
prove a knowing “possession” includes (1) whether the defendant owned or had
the right to possess the place where the drugs were found; (2) whether the
defendant made furtive gestures; (3) whether the contraband was in plain view;
(4) whether the place where the drugs were found was enclosed; (5) whether the
defendant was present when the search was conducted; (6) whether the defendant
was in close proximity to the contraband; (7) whether the defendant had access
to the contraband; (8) whether the defendant was found with a large amount of
cash; and (9) whether the defendant made incriminating statements when
arrested. Id. at 162 n.12; Olivarez v. State, 171
S.W.3d 283, 291 (Tex. App.–Houston [14th Dist.] 2005, no pet.). It is not the
number of links that is dispositive, but rather the logical force of all of the
evidence. Evans, 202 S.W.3d at 162. “In deciding whether the
evidence is sufficient to link the defendant to contraband, the trier of fact
is the exclusive judge of the credibility of the witnesses and the weight to be
given to their testimony.” Poindexter, 153 S.W.3d at 405.

Analysis

We
first note that the record contains conflicting testimony about the ownership
of the vehicle in which the marijuana was found.  Ms. Daniel, the other
occupant of the vehicle, testified that the vehicle was Appellant’s and that he
drove it to pick her up the morning of the arrest.  She stated further that she
and Appellant drove around Tyler for the next twelve hours during which they
stopped by a clothing store, went back to her apartment, went to a motel where
they had sexual relations, and then drove to a fast food restaurant before
being stopped.   On the video made by the officer’s in-car video camera,
Appellant made conflicting statements concerning the ownership of the car,
referring to the vehicle as “my car,” “my dad’s car,” and “[Ms. Daniels’s]
car.”  Regardless of who owned the vehicle, Appellant was in the vehicle most
of the day of the arrest, and the trial court reasonably could have found that,
at a minimum, Appellant had the right to possess the vehicle.

Moreover,
when Officer Roberts stopped the vehicle on the night of November 3, 2009, he
noticed “all kinds of furtive movements going on in the vehicle.”  He testified
that when he approached the vehicle from the passenger side, where Appellant
was seated, both occupants were breathing heavily and appeared very nervous. 
Officer Roberts became concerned and called for backup.  Officer Roberts
testified further that Appellant continued to make furtive movements by “moving
his hands in different parts of the vehicle.”  According to Officer Roberts, he
told Appellant multiple times to keep his hands where they could be seen. 
Officer Matthew Leigeber, also with the Tyler Police Department, arrived during
the interaction between Officer Roberts and Appellant.  He approached the
driver’s side, where Ms. Daniel was seated.  Officer Leigeber testified that
Appellant was making “a lot of furtive movements,” reaching around, and was
told repeatedly to show his hands.

Officer
Leigeber also testified that the marijuana was plainly visible from his vantage
point.  He stated that when he had Ms. Daniel exit the vehicle, he saw a clear
plastic bag with a green leafy substance he believed to be marijuana in the
center console of the car between the passenger’s and driver’s seats.  He
stated further that the center console had a cover that opened like a door with
the hinge on the passenger’s side, but the door was open about two inches. 
Appellant had been sitting in the passenger’s seat next to the console and was
present when the marijuana was found.

Additionally,
Appellant was in close proximity and had access to the marijuana.  Officer
Leigeber testified that the distance between where the marijuana was located
and where a person would be seated in the front of the vehicle was “small.” 
Officer Roberts testified that Appellant tried twice to reach with his left
hand toward the center console of the vehicle.   

Officer
Leigeber testified further that when Appellant was searched, he had $633 in
cash, which the officer testified was a fairly substantial amount of cash. 
Officer Leigeber also testified that Appellant made an incriminating statement
in the back of the patrol car on the way to the Smith County Jail.  The video
made by the officer’s in-car video camera shows Appellant asking why he is
going to jail and Officer Leigeber responding that he was going to jail for
possession of marijuana and driving with a suspended license.  The trial judge
concluded after watching the video that Appellant then asked “[w]here did my
marijuana go?”  Office Leigeber responded that “the other officer has it.”  The
trial judge’s opinion is consistent with Officer Leigeber’s testimony about
what he believed Appellant asked.[2]


Appellant
points out, however, that the evidence shows Ms. Daniels admitted that the marijuana
was solely hers.  On the day after the arrest, Ms. Daniel signed a handwritten
affidavit claiming ownership of the marijuana and stating that Appellant had no
knowledge of it.  At the hearing, Ms. Daniel testified that she was driving the
car, the marijuana was hers, she placed it in the console, and Appellant did
not know she placed it there.  However, the trial court, sitting as finder of
fact, is the exclusive judge of the credibility of the witnesses and the weight
to be given to their testimony.  Poindexter, 153 S.W.3d at 405.  The
trial court did not find this testimony credible, which was within its
prerogative as fact finder. 

Keeping
in mind the lesser preponderance of the evidence standard and viewing the
evidence in the light most favorable to the trial court’s order, we conclude
that the evidence discussed above,  coupled with the reasonable inferences from
that evidence, provide sufficient logical force to establish that Appellant
exercised actual care, custody, control, or management of the marijuana in the
vehicle.  See Evans, 202 S.W.3d at 166.  Consequently, the
evidence is sufficient to show that Appellant violated a condition of his
community supervision based on his simple possession of marijuana.  Therefore,
we need not address his challenge to the sufficiency of the evidence to support
the other alleged violations.[3]  Sanchez, 603
S.W.2d at 871; Moore, 605 S.W.2d at 926; Cochran,
78 S.W.3d at 28.

 

Disposition

            Having
overruled Appellant’s sole issue, we affirm the judgment of the
trial court.

                                                                   James
T. Worthen

                                                                                        
Chief Justice

Opinion delivered June 8, 2011.

Panel consisted
of Worthen, C.J., Griffith, J., and Hoyle, J.

(DO NOT PUBLISH)


 
 
 
 
 
 
 
  
 
 
 
 
 
  
 












[1]
Appellant
argues that the “simple possession” violation is not shown because Texas law
only prohibits possession of marijuana in a “usable quantity,” and the evidence
does not support a finding that the marijuana in this case is “usable.” 
However, Appellant’s counsel specifically stated at trial that the simple
possession allegation “does not allege a violation of law because they don’t
allege a usable amount of marijuana, [the simple possession allegation] would
be a violation of probation, even if it is not a violation of the law.  The
only difference in [the two marijuana allegations] is the [first one] alleges a
new violation of law. . . .  There is some difference in finding the defendant
violated the law and, hence, his probation, and violated his probation.”

 





                [2] Appellant
contended at the hearing that the statement was “[b]ut it wasn’t my marijuana,
though.”  On appeal, he asserts that he asked “[w]here did my money go?”  After
reviewing the videotape, we find it impossible to determine, with any
certainty, what Appellant asked the officer.  Therefore, we defer to the trier
of fact, who is the exclusive judge of the credibility of the witnesses and the
weight to be given to their testimony.  See Poindexter,
153 S.W.3d at 405.  

 





[3] Appellant
argues that we should decline to apply the “one violation” appellate rule
because it introduces an element of arbitrariness to appellate adjudication. 
However, this rule, as set out in Sanchez and Moore,
has not been overturned and has been applied consistently in Texas appellate
courts on multiple occasions. Alternatively, he argues that if the court finds
a violation, we are required to conduct a second analysis on whether the
violation is “substantial.” See Morrissey v. Brewer, 408
U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). The Texas Court of Criminal
Appeals did not include this additional step in its analysis in either Moore
or Sanchez, and we decline to do so here.