

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00039-CR
## NO. 02-15-00040-CR

ALFONZO ROBINSON                                  APPELLANT

V.

THE STATE OF TEXAS                                     STATE

----------

## FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NOS. 1344698D, 1344697D

----------

## MEMORANDUM OPINION[1]

----------

In Cause No. 02-15-00040-CR, a jury convicted Appellant Alfonzo Robinson of possession with intent to deliver between 4 and 200 grams of methamphetamine and assessed his punishment at thirty-six years' confinement and a $10,000 fine. In Cause No. 02-15-00039-CR, the same jury convicted Robinson of unlawful possession of a firearm and assessed his punishment at

---

[1]*See* Tex. R. App. P. 47.4.

ten years' confinement and a $10,000 fine. In a single point, Robinson challenges the sufficiency of the evidence to support both convictions, arguing that the State failed to prove that he exercised actual care, custody, and control over both the drugs and the firearm. We will affirm.

Officer Josh Bennett was patrolling south Euless on August 23, 2013, when around 8:00 a.m., he observed two people exit a motel room, enter a vehicle, and drive away. He ran a check on the vehicle's license plate, which showed that an arrest warrant had been issued for the owner, Melinda Romero, so he initiated a traffic stop. Romero was driving the vehicle and acknowledged that a warrant may have been issued for her arrest. Robinson was sitting in the front passenger seat, had a large backpack between his feet on the floorboard, and verbally identified himself. Officer Bennett returned to his cruiser to conduct checks on both Romero and Robinson, and while doing so, he noticed them make what he described as furtive movements—"they would kind of lean towards each other to the center of the car, and then they'd kind of lean back a little bit and make continuous movements."

Officer Bennett had Romero exit the vehicle, and about three minutes later, an assisting officer had Robinson exit the vehicle. Romero consented to a search of the vehicle, and Officer Bennett located a large bag on the floorboard under the driver's seat containing what was later determined to be approximately twenty-seven grams of methamphetamine. Officer Bennett placed Romero and Robinson under arrest and continued the search, whereupon he found a loaded

2

Bersa .9 mm handgun under the driver's seat and unused "deal" baggies, a digital scale, a bag containing what appeared to be methamphetamine, a loaded magazine clip that fit the .9 mm, a card that had Robinson's name on it, and some male grooming items inside the backpack that had been between Robinson's feet. Robinson later signed a property receipt acknowledging that the backpack belonged to him. Romero had two smoking pipes and a small amount of what appeared to be methamphetamine in her purse.[2] An unidentified number of puppies were in the back seat of the vehicle.

At trial, Officer Bennett testified that he had been assigned to the Tarrant County Narcotics Unit for three years and that he had experience in the field with both drug users and drug dealers. He agreed that twenty-seven grams was "a rather large amount of methamphetamine"—"[a] typical user amount would be under a gram or a gram, much smaller than that"—and he opined that Robinson was going to deliver the methamphetamine.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

---

[2]The State did not request that the substances found in Romero's purse and Robinson's backpack be tested, but Officer Bennett opined that it was methamphetamine.

3

To prove unlawful possession of a controlled substance, the State must prove (1) that the accused exercised control, management, or care over the substance and (2) that the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005); *see* Tex. Health & Safety Code Ann. § 481.115(a) (West 2010); Tex. Penal Code Ann. § 1.07(a)(39) (West Supp. 2015) (defining "Possession"). In cases involving unlawful possession of a firearm by a felon, we analyze the sufficiency of the evidence under the rules adopted for determining the sufficiency of the evidence in cases of unlawful possession of a controlled substance. *Bates v. State*, 155 S.W.3d 212, 216 (Tex. App.—Dallas 2004, no pet.). Thus, the State was required to prove, among other things, that the accused exercised actual care, custody, or control of the firearm. *Id.*; *see* Tex. Penal Code Ann. § 46.04(a) (West 2011).

Mere presence alone is insufficient to establish possession. *Oaks v. State*, 642 S.W.2d 174, 177 (Tex. Crim. App. 1982). However, when the contraband is not found on the accused's person or is not in the exclusive possession of the accused, independent facts and circumstances may link the accused to the contraband such that it may be justifiably concluded that the accused knowingly possessed the contraband. *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006). Relevant factors connecting the defendant to possession of an illegal substance include (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's

4

proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Id.* at 162 n.12; *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.). These factors are non-exclusive, and it is not the number of links but the "logical force" of all the evidence that supports a finding of guilt. *Olivarez*, 171 S.W.3d at 291–92.

The logical force of the evidence viewed in the light most favorable to the verdict sufficiently connects Robinson to both the twenty-seven grams of methamphetamine and the firearm found under the driver's seat. *See Evans*, 202 S.W.3d at 161–62. Specifically, Robinson was in the vehicle in which the drugs and the firearm were found and made furtive gestures when Officer Bennett returned to his cruiser to check Romero's and Robinson's identifications. Both Robinson and Romero had access to where the drugs and the firearm were

5

located, but the positioning of the transmission tunnel behind the center console made it easier for Robinson to reach behind and under the driver's seat. Robinson had a digital scale, unused baggies, a loaded magazine that matched the firearm, a small amount of what appeared to be methamphetamine, and some kind of identification card in his backpack. The paraphernalia in Robinson's possession was consistent with what a drug dealer would possess.[3] *See Luckett v. State*, No. 02-10-00487-CR, 2011 WL 3795251, at *4 (Tex. App.—Fort Worth Aug. 29, 2011, pet. ref'd) (mem. op., not designated for publication) (reasoning similarly).

Robinson points out that he did not own the vehicle, but that fact would not prevent him from exercising possession of the drugs and the firearm. *See Tucker v. State*, 183 S.W.3d 501, 509–12 (Tex. App.—Fort Worth 2005, no pet.) (addressing similar argument). Robinson argues that the furtive movements made during the stop could have been him and Romero attempting to control the puppies in the back seat, but as the State responds, that inference contradicts the standard of review, which requires us to view the evidence and inferences in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Similarly, Robinson appears to suggest that the narcotics and the firearm could have belonged to an unidentified male who, after Robinson's arrest, went to the same hotel room that Romero and Robinson were in before they were

_____

[3]Romero had two smoking pipes and a small amount of what appeared to be methamphetamine in her purse—contraband that was consistent with what a user would possess.

6

arrested, but the jury considered that evidence and impliedly rejected it. When performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Rather, we must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.*

The evidence is sufficient to support Robinson's convictions for possession with intent to deliver between 4 and 200 grams of methamphetamine and unlawful possession of a firearm. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. We overrule his sole point and affirm the trial court's judgments.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL: WALKER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 12, 2016

7