

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-08-00094-CR
_____

ANTWONE JOHNERAL SIMMONS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Fourth Judicial District Court
Rusk County, Texas
Trial Court No. CR06-250

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Antwone Johneral Simmons fled and disappeared into the woods as soon as Trooper Jason Bundy asked him to step out of the passenger side of a pulled-over maroon Buick. Minutes later, Simmons reappeared, surrendered, and was apprehended. After arresting Simmons for evading police, Bundy surveyed the woods and located two clear plastic bags containing .06 grams of cocaine. Simmons was convicted by a jury for possession of less than one gram of cocaine, sentenced to two years' confinement in a state jail facility, and assessed a $2,500.00 fine. On appeal, Simmons alleges the evidence was legally and factually insufficient to support his conviction. Based on all the circumstances present at the time of Simmons' flight and arrest, we affirm the judgment of the trial court.

Simmons was the lone passenger in the maroon Buick, which had been stopped by Bundy for following another vehicle too closely. Bundy asked the Buick's driver to step out and noticed she was extremely nervous, a quality she stated was due to a diet pill ingested earlier that morning. The driver told Bundy she was transporting Simmons, who intended to purchase a used car in the neighborhood. While Bundy questioned the driver about whether she had anything illegal in the car, another officer, who had recently arrived, approached Simmons and began to question him. After the driver told Bundy that nothing illegal was in the car, Bundy obtained consent to search the vehicle. Bundy asked Simmons to step out of the vehicle and noticed a large, "colostomy" sized bulge underneath Simmons' baggy pants. As soon as Simmons stepped out of the car, he ran into

2

the nearby woods. Bundy did not have the opportunity to pat Simmons down before he fled. While Bundy "felt that it was drugs [Simmons] had, [he] had no way of knowing." The other officer on the scene stated he did not see a bulge in Simmons' pants.

Nevertheless, Bundy radioed for canine-unit assistance and asked for other officers to pursue Simmons while he further detained the driver. Bundy cited the driver for drug paraphernalia after finding marihuana residue, rolling papers, and marihuana scissors in the bottom of the driver's purse. Next, a nearby homeowner reported that she saw a "black man . . . walking out of the woods from their yard." Bundy went to the road beside the homeowner's house, quickly spotted Simmons, and arrested him. A maximum of sixteen minutes had passed between Simmons' flight and his arrest. After recording that Simmons was carrying $862.00 in cash, which Simmons claimed was money for the car's purchase, Bundy took Simmons to jail. Simmons maintained that he fled because he was on parole and did not know what would happen.

After Simmons was taken to jail, the canine unit arrived at the scene of the traffic stop and alerted while in the backseat on the passenger side. An examination of the backseat revealed what appeared to be marihuana residue. Bundy then began his own search of the woods. He went to the residence from which Simmons' location was reported and walked into the woods until he saw a creek. After deciding that Simmons had not crossed the creek, Bundy started walking back and noticed fresh footprints that led to a woodpile on a clear-cut piece of property where a new house was being built. Although Bundy acknowledged that "there had been a couple more people back in

3

that portion of the woods" and that he could not tell if the footprints belonged to Simmons, he felt it was possible that Simmons had traveled the 100 yards from the residence to the woodpile. Bundy looked into the woodpile and found two one-ounce clear plastic bags that were torn open with their contents apparently dumped out. The bags still contained some powder residue that looked and smelled like cocaine. After the bags were found, the canine unit was sent into the woods, alerted on the same woodpile, and found only an amount of cocaine that was described as a "small spot." At trial, the chemist testified that one of the bags contained .06 grams of cocaine.

When conducting a legal sufficiency analysis, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Clewis v. State*, 922 S.W.2d 126, 132–33 (Tex. Crim. App. 1996). This standard serves as a tool to determine whether there is a fact issue at all. *Clewis*, 922 S.W.2d at 133. In other words, if the evidence is insufficient under the *Jackson* standard, we must render a judgment of acquittal. *Id.* However, if the *Jackson* standard is met, we may not sit as the thirteenth juror reevaluating the weight and credibility of the evidence. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, we must give full play to the fact-finder's responsibility to weigh the evidence, resolve conflicts in the testimony, and draw reasonable inferences from basic facts. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Clewis*, 922 S.W.2d at 133; *Bottenfield v. State*, 77 S.W.3d 349, 354 (Tex. App.—Fort Worth 2002, pet. ref'd) (citing *Jackson*, 443 U.S. at 319).

4

Because factual sufficiency is an issue of fact, we are not free to re-weigh the evidence and set aside a jury verdict merely because we feel a different result is more reasonable. *Clewis*, 922 S.W.2d at 135. Instead, we give due deference to the jury's determinations and will find the evidence factually insufficient only when necessary to prevent manifest injustice. *Johnson*, 23 S.W.3d at 8–9, 12; *Clewis*, 922 S.W.2d at 133, 135. Thus, we view the evidence in a neutral light when assessing factual sufficiency and determine whether the proof of guilt is so obviously weak as to undermine confidence in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be clearly wrong and unjust. *Johnson*, 23 S.W.3d at 11; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); *Harris v. State*, 133 S.W.3d 760, 764 (Tex. App.—Texarkana 2004, pet. ref'd). If we find the evidence factually insufficient, we must vacate the conviction and remand the cause for a new trial in order to avoid substituting our own judgment for that of the jury. *Clewis*, 922 S.W.2d at 133–35.

At trial, the State was required to prove that Simmons exercised control, custody, management, or care over the cocaine and that he knew the matter possessed was contraband. *See Evans v. State*, 202 S.W.3d 158, 161 (2006); *see also* TEX. PENAL CODE ANN. § 1.07(a)(39) (Vernon 2003) (possession defined). By itself, mere presence at a location where drugs are found is not enough evidence to exhaust the State's burden. *Id.* at 162. However, presence or proximity, when combined with other direct or circumstantial evidence, may be sufficient to establish control, management, custody, or care beyond a reasonable doubt if the proof amounts to more than a strong

5

suspicion or probability.  *Id.*; *Lassaint v. State*, 79 S.W.3d 736, 741 (Tex. App.—Corpus Christi 2002, no pet.).

To discern whether Simmons' connection with the cocaine was more than fortuitous, we will use the affirmative links test adopted by Texas courts to protect the innocent bystander from conviction merely because of their unfortunate proximity to someone else's drugs.  *Evans*, 202 S.W.3d at 161–62.  The recognized links are many:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt; (15) the accused made incriminating statements connecting himself or herself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances.

*Id.* at 166; *Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref'd); *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Kyte v. State*, 944 S.W.2d 29, 31 (Tex. App.—Texarkana 1997, no pet.).  This nonexhaustive list is not a litmus test, and it is the logical force of all of the evidence that guides our determination.  *Olivarez*, 171 S.W.3d at 291.  In other words, the number of affirmative links present is not as important as

6

the degree to which they tend to link the defendant to the controlled substance. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.); *Williams v. State*, 906 S.W.2d 58, 65 (Tex. App.—Tyler 1995, pet. ref'd); *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd).

The analysis of several links favors Simmons. According to Bundy's testimony at trial, there was no contraband in plain view. Also, there was no evidence that Simmons was under the influence of, or possessed, contraband or narcotics when arrested. He did not make incriminating statements when arrested and did not have the right to possess the woodpile or car where the cocaine and marihuana paraphernalia were found. Additionally, the small amount of cocaine that Bundy located did not comport with the large "colostomy"-sized bulge seen underneath Simmons' baggy pants.

However, although Simmons was not present when Bundy searched the woods, he had previously fled into the woods where the cocaine was recovered. As for proximity, Bundy testified that the woodpile, which he found while walking and trying to retrace Simmons' steps, was about 100 yards away from the residence where Simmons was found. Bundy stated he believed the fresh footprints around the woodpile could have been made by Simmons, who was in the woods for a maximum of sixteen minutes. The canine unit picked up an odor of contraband in the car and in the woodpile. The driver of the vehicle was cited for marihuana paraphernalia found in her purse, and a substance that appeared to be marihuana residue was later found in the backseat of the vehicle. Also, Simmons was found with $862.00 in cash, which the jury could have determined was a large

7

amount. Obviously telling is the fact that Simmons fled immediately upon being asked to step outside of the vehicle. While flight or mere presence at a scene where drugs are found are alone insufficient by themselves to support a guilty verdict, they are circumstances from which an inference of guilt can be drawn by a fact-finder. *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981) (op. on reh'g); *Hill v. State*, 161 S.W.3d 771, 776 (Tex. App.—Beaumont 2005, no pet.); *Segura v. State*, 850 S.W.2d 681, 684 (Tex. App.—Corpus Christi 1993, no pet.). The jury could have determined that Simmons' flight indicated a consciousness of guilt and that Simmons knew that matter possessed by him was contraband.

Viewing these factors in the light most favorable to the verdict, we find the evidence created fact issues as to whether Simmons had control, management, custody, or care of the cocaine Bundy located and whether Simmons knew the substance was contraband. Since it was within the purview of the jury to weigh credibility and conflicts in the evidence, it could rationally find the essential elements for possession of less than one gram of cocaine beyond a reasonable doubt. Thus, we cannot sit as the thirteenth juror and disturb the jury's findings unless the evidence when viewed in a neutral light was greatly outweighed by contrary proof so as to be clearly wrong and unjust, or was so obviously weak that confidence in the verdict is undermined. Here, the evidence of Simmons' guilt including his flight, proximity to the cocaine, odor of contraband, paraphernalia that was found on the driver, and the amount of cash carried by Simmons, is not greatly outweighed by the links

tending to disprove guilt, such that the jury's verdict is undermined or can be considered wrong or unjust. The evidence supporting Simmons' conviction was both legally and factually sufficient.

Based on all the circumstances surrounding Simmons' arrest, we find the evidence was legally and factually sufficient to show Simmons had control, management, custody, or care over the cocaine found in the woods. We also find that the jury was not clearly wrong or unjust when it found that Simmons knew the matter possessed was contraband. Therefore, we affirm the judgment of the trial court.

Josh R. Morriss, III
Chief Justice

Date Submitted:     October 16, 2008
Date Decided:       December 16, 2008

Do Not Publish

9