In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00058-CR

                                                ______________________________

 

 

                                            OSCAR VEGA,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 114th
Judicial District Court

                                                             Smith County, Texas

                                                       Trial Court
No. 114-1035-09

 

                                                    
                                              

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            According to
Oscar Vega, notwithstanding the circumstances surrounding his drug-related
arrest by Tyler[1] police
officers, the State did not sufficiently prove that he had any connection with
30.61 grams of crack cocaine found in a Wendy’s soft drink near Vega.  He argues that, therefore, the evidence is
legally and factually insufficient that he was guilty of possession of a
controlled substance with intent to deliver.[2]  We disagree and affirm the judgment of the
trial court.

            At the time
of his arrest, Vega had been riding in a Ford Explorer driven by Jose Refugio
Vasquez and also occupied by Geronimo Cruz. 
Earlier that night, Vasquez and Cruz had been riding around, smoking
marihuana.  At some point, the duo
decided to get some food at the local Wendy’s drive-thru and to kill two birds
with one stone by engaging in a drug transaction there.  They picked up their friend Vega along the
way.  

            Meanwhile,
Destry Wayne Walsworth, a sergeant with the Tyler Police Department, was
conducting undercover surveillance on Carlos Enrique Garcia, who was suspected
of selling “powder cocaine and crack cocaine.” 
In his unmarked vehicle, Walsworth followed Garcia’s tan Chevrolet
Malibu into the Wendy’s parking lot.  Due
to the late night hour, the Wendy’s inside dining area was closed, but the
drive-thru was open.  Garcia parked in
the northwest corner of the parking lot—a maneuver Walsworth found
suspicious.  Walsworth pulled into the
drive-thru line behind Vasquez’s Explorer to avoid catching Garcia’s
attention.  From that position, Walsworth
witnessed what his experience suggested was a drug drop-off.

            The drop-off
and the stop happened this way.  Cruz
exited the Explorer and got in the passenger seat of Garcia’s Malibu.  The dome light was turned on and the parties
appeared to be looking at something.  A
minute or two later, Cruz left the vehicle and got back into the front
passenger seat of the Explorer.  As
Garcia left the parking lot, Walsworth radioed to a waiting surveillance crew
and directed them to pull the Malibu over as he continued to observe the
Explorer.  Vasquez, Cruz, and Vega got
their Wendy’s order from the drive-thru and drove out of the parking lot.  Walsworth then noticed Cruz not wearing his seat
belt.  Walsworth radioed to Officer
Michael Kieny, who was driving a marked unit, and asked him to pull the
Explorer over for Cruz’s seat belt violation. 
Kieny signaled to the driver of the Explorer that it be pulled over, and
Vasquez did so after travelling two to four blocks at a slow speed.  

            In addition
to Cruz’s traffic violation, Vasquez did not have his driver’s license and
could not locate proof of insurance. 
There was a “strong odor of burnt marijuana” coming from the
vehicle.  Vasquez was nervous and
shaking.  Officers asked the three
occupants to exit the vehicle.  Vega, who
was sitting in the back seat on the passenger side, complied with the request.  

            Kieny
testified, “When I asked Mr. Vega to open the door, I noticed there was ice and
[his] pants were wet in the front. . . . 
He said when they were being pulled over that he spilled his drink in
his lap.”  When asked to identify
himself, Vega initially gave Kieny a false name and birth date.  A search of Vega produced 3.08 grams of marihuana,
another bag of .3 grams of marihuana, and two Clonazepam pills.  A search of Vasquez and Cruz produced no
drugs, although Vasquez admitted to smoking marihuana earlier. 

            During a
search of the Explorer, officers found a Wendy’s bag on the passenger
floorboard with 8.75 grams of marihuana. 
Located beneath the center console were 105.55 grams of marihuana, 1.98
grams of cocaine, and another .49 gram bag of cocaine.  Officers observed that there were three Wendy’s
cups with lids and straws, two in the front center console, and one “on
the—back of the center console.”  The “drink
on the driver’s side front” contained not only cola and ice, but also hid 30.61
grams of crack cocaine—the drugs leading to the State’s indictment in this
case.  This drink was only partially
full, while the other two drinks were fairly full.  

            Vega focuses
on the location of the 30.61 grams of cocaine and argues that the evidence is
legally and factually insufficient to prove that particular drug was possessed
by Vega, as opposed to Vasquez or Cruz.

            The legal
and factual sufficiency of the evidence supporting a conviction is reviewed
under well-established standards.  In
conducting a legal sufficiency review, we consider the evidence in the light
most favorable to the judgment to determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt.  Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).  We must give deference to “the trier of fact
to fairly resolve conflicts in testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.”  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318–19
(1979)).  We are not required to
determine whether we believe that the evidence at trial established guilt
beyond a reasonable doubt; rather, when faced with conflicting evidence, we
must presume that the trier of fact resolved any such conflict in favor of the
prosecution, and we must defer to that resolution.  State
v. Turro, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

            In
conducting a factual sufficiency review, we consider the evidence in a neutral
light. Watson v. State, 204 S.W.3d
404, 414–15 (Tex. Crim. App. 2006).  We
may find evidence factually sufficient in two ways:  (1) the evidence supporting the conviction is “too
weak” to support the fact-finder’s verdict, or (2) considering conflicting
evidence, the fact-finder’s verdict is against the great weight and
preponderance of the evidence.  Laster, 275 S.W.3d at 518.  In so doing, we may find the evidence
insufficient only when necessary to prevent manifest injustice.  Id.  Although we give less deference to the
judgment in a factual sufficiency review, we will not override it simply
because we disagree with it.  Id.

            Both legal
and factual sufficiency are measured by the elements of the offense as defined
by a hypothetically correct jury charge. 
Malik v. State, 953 S.W.2d
234, 240 (Tex. Crim. App. 1997); see also
Grotti v. State, 273 S.W.3d 273, 280
(Tex. Crim. App. 2008).  Vega was in
possession of cocaine with intent to deliver as charged in the indictment if
he:  (1) knowingly (2) possessed,
(3) with intent to deliver, (4) four grams or more but less than 200 grams (5)
of cocaine.  Tex. Health & Safety Code Ann. § 481.112(a), (d) (Vernon 2010).  Vega contests only the elements of knowing[3]
possession.  With the elements of the
hypothetically correct jury charge in mind, we consider the evidence.

            The State
was required to prove that Vega exercised control, custody, management, or care
over the cocaine and that he knew the matter possessed was contraband.  Tex.
Penal Code Ann. § 1.07(a)(39) (Vernon Supp. 2009); Evans v. State, 202 S.W.3d 158, 161 (Tex. 2006).  By itself, mere presence at a location where
drugs are found is not enough evidence to exhaust the State’s burden.  Evans,
202 S.W.3d at 162.  However, presence or
proximity, when combined with other direct or circumstantial evidence, may be
sufficient to establish, beyond a reasonable doubt, an actor’s control, management,
custody, or care if the proof amounts to more than a strong suspicion or
probability.  Id. at 161; Lassaint v. State,
79 S.W.3d 736, 741 (Tex. App.—Corpus Christi 2002, no pet.).

            Since Vega
was not in exclusive possession of the cocaine or the vehicle in which it was
found, additional independent facts and circumstances must link him to the
contraband “in such a way that it can be concluded that the accused had
knowledge of the contraband and exercised control over it.”  Roberson
v. State, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).
 In other words, the State must establish
that Vega’s connection with the narcotics was more than just fortuitous.  Poindexter
v. State, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005). To conduct this
analysis, we use the links test adopted by Texas courts to protect the innocent
bystander from being convicted merely because of his or her unfortunate
proximity to someone else’s drugs.  Evans, 202 S.W.3d at 161–62.

            These links
include (1) Vega’s presence when a search is conducted, (2) whether the
contraband was in plain view, (3) Vega’s proximity to and the accessibility of
the narcotics, (4) whether he was under the influence of narcotics when
arrested, (5) whether he possessed other contraband or narcotics when arrested,
(6) whether he made incriminating statements when arrested, (7) whether he
attempted to flee, (8) whether he made furtive gestures, (9) whether there was
an odor of contraband, (10) whether other contraband or drug paraphernalia were
present, (11) whether Vega owned or had the right to possess the place
where the drugs were found, (12) whether the place where the drugs were
found was enclosed, (13) whether Vega was found with a large amount of cash,
(14) whether his conduct indicated a consciousness of guilt, (15) whether he
made incriminating statements connecting himself to the contraband, (16) the
quantity of the contraband, and (17) whether Vega was observed in a suspicious
area under suspicious circumstances.  Id. at 162 n.12; Muckleroy v. State, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana
2006, pet. ref’d); Olivarez v. State,
171 S.W.3d 283, 291 (Tex. App.—Houston [1st Dist.] 2005, no pet.); Kyte v. State, 944 S.W.2d 29, 31 (Tex.
App.—Texarkana 1997, no pet.).  This
nonexhaustive list is not a litmus test, and it is the logical force of all of
the evidence that guides our determination.  Olivarez,
171 S.W.3d at 291.  In other words, the
number of links present is not as important as the degree to which they tend to
link the defendant to the controlled substance.  Taylor
v. State, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.); Williams v. State, 906 S.W.2d 58, 65 (Tex.
App.—Tyler 1995, pet. ref’d); Whitworth
v. State, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref’d).

            Factors
tending to support the judgment include factors 1, 3, 5, 6, 9, 10, 12, 14, 16,
and 17.  Vega was present when the search
was conducted, and Walsworth testified Vega was in a position to place the cup
in the front center console from the back seat. 
Vega possessed marihuana and Clonazepam when arrested, and initially
gave incorrect identification.  Officers
smelled the odor of burnt marihuana; other contraband was present; the Explorer
was an enclosed area; giving a false identification indicated consciousness of
guilt; the cocaine in the Wendy’s cup was worth “easy 500-plus” dollars, an
amount consistent with dealing drugs; and Vega was observed under the suspicious
circumstances of a late night drug drop-off.

            Factors
2, 4, 7, 8, 11, 13, and 15 support Vega’s stance.  There was no contraband in plain view and no
evidence that Vega was under the influence of any substance when arrested.  Although testimony suggested the Explorer
slowly travelled two to four blocks before pulling over after being signaled,
Kieny said there was no acceleration in an effort to get away, and Vega was not
driving the vehicle.  Kieny testified
Vega did nothing out of order, indicating no furtive gestures were made.  Vega did not own the Explorer, possessed no
cash during his arrest, and made no statement connecting himself to the large
amount of cocaine.  Vega also relies on
testimony from Vasquez that Cruz owned the drugs made the subject of the charge
and that Vega possessed only the drugs that were on his person.  Vasquez was arrested with $485.00 in his
pocket, Cruz with $1,358.00.  Vasquez
claimed that Vega “didn’t really have nothing to do with it.”  

            We find that
the evidence, when reviewed in a light most favorable to the judgment, is
legally sufficient.  It presents a fact
question for the trier of fact to resolve.  
As fact-finder, the trial court was free to disbelieve Vasquez’s
testimony as an effort to protect Vega. 
This is exemplified by Vasquez’s claim of ownership of the crack cocaine
contrasted with his claim that he did not see Cruz put it in the cup.  Although some factors favored Vega when
conducting the links test, Vega was the only one with ice and cola on his pants
when arrested.  He made the statement to
Kieny that he had spilled his drink in his lap. 
Considering that the two Wendy’s cups closest to Vega and Cruz were “[f]airly
full” and that all the cups had lids and straws, a deduction that Vega was the
person who put the cocaine in the cup closest to Vasquez—spilling some of the
ice and drink in a rush to hide the cocaine from the pursuing police car—was a
reasonable deduction for the trial court to make.

            We find that
the evidence was factually sufficient for the court to find Vega was in knowing
possession of the 30.61 grams of cocaine. 

 

 

 

 

 

 

 

 

 

            We affirm the trial court’s
judgment.

 

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          September
13, 2010

Date Decided:             September
14, 2010

 

Do Not Publish

 











[1]Originally appealed to the Twelfth Court of Appeals,
this case was transferred to this Court by the Texas Supreme Court pursuant to
its docket equalization efforts.  See Tex.
Gov’t Code Ann. § 73.001 (Vernon 2005). 
We are unaware of any conflict between precedent of the Twelfth Court of
Appeals and that of this Court on any relevant issue.  See
Tex. R. App. P. 41.3.

 





[2]Following
a bench trial, Vega was found guilty and was sentenced to eight years’
confinement.  





[3]Vega’s
brief alleges that he did not know of the drugs located in the console.  Our analysis focuses solely on the cocaine
found in the Wendy’s cup because it was an insufficient quantity to implicate
the statute under which Vega was convicted. See
Tex. Health & Safety Code Ann. §
481.112(a), (d).