Affirmed and Memorandum Opinion filed March 8, 2011.

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-10-00509-CR



 

Jade Shantrell Williams, Appellant

V.

The State of Texas, Appellee

 



On Appeal from the County Criminal
Court at Law No. 1

Harris County, Texas

Trial Court Cause No. 164372701010



 

MEMORANDUM  OPINION

 

Appellant Jade Shantrell Williams appeals her
conviction for possession of marijuana weighing less than two ounces[1]
on the ground that the evidence is legally and factually insufficient to
support her conviction.  We affirm. 

Background

Appellant was indicted for possession of marijuana
weighing less than two ounces on November 24, 2009.  A two-day trial was held beginning
on April 28, 2010.  At trial, Harris County Reserve Deputy Anthony Jones testified
that he and Harris County Deputy Max Martinez were on patrol between 4 a.m. and
5 a.m. on November 24, 2009 when they stopped behind a car at a red traffic
light.  The light turned green and then red again, but the car remained at the
light.  The deputies decided to check on the car’s driver — later identified as
Yvonne Davis — and the passenger — later identified as appellant — to see if
everything was all right.  They turned on the patrol car’s emergency lights and
approached the car.  

Deputy Jones testified that the car was still in
drive and the brake lights were on, but that Davis and appellant were asleep. 
Deputy Martinez knocked on the driver’s side window trying to get Davis’s and
appellant’s attention.  After four or five knocks, Davis woke up, looked at the
traffic light, took her foot off the brake, drove for about a foot, stopped,
and then rolled down her window.  Deputy Jones testified that, when Davis rolled
down her window, he noticed a strong odor of burnt marijuana, even though he
was standing at the passenger window.  The deputies asked Davis and appellant
to step out of the car.  Deputy Jones testified that he asked appellant if she
had smoked marijuana and appellant told him that Davis and she had smoked marijuana
about three hours ago.  Deputy Jones testified that appellant seemed to be
sleepy and under the influence of marijuana.

When Davis and appellant exited the car, Deputy
Martinez showed Deputy Jones a bag of marijuana on the driver’s side door. 
Deputy Martinez placed Davis in the back seat of the patrol car.  Davis made no
statements regarding the bag of marijuana Deputy Martinez had recovered from
the driver’s side door.  Deputy Jones testified that when appellant was asked
for identification, she stated her identification was in her purse in the car. 
Deputy Jones testified that appellant consented to the deputies retrieving her
purse from the car.  After Deputy Martinez retrieved her purse, appellant
identified her purse and then consented to the deputies taking her
identification out of her purse.  Next to appellant’s identification, the
deputies noticed marijuana wrapped in a bag; it was the size of a baseball. 
Deputy Jones testified that appellant’s purse was small — about 12 inches by
five inches — so that it would have been impossible for someone to look inside
the purse and not notice the marijuana.

After the deputies found the marijuana in appellant’s
purse, Deputy Jones took appellant to the back seat of the patrol car.  Deputy
Jones testified that appellant did not act surprised when the deputies found
the marijuana in her purse; never said the marijuana they found in her purse belonged
to Davis; and made no comments about the marijuana.  When Deputy Jones took an
inventory of the car, he found no other contraband in the car; however, he
found marijuana ashes in an ashtray in “the middle console and just basically
in the middle part of the vehicle.”  Approximately 45 minutes elapsed while
Deputy Jones inventoried the car, tagged the evidence, and weighed it.  During
that time, Deputy Jones could hear Davis and appellant speaking and yelling in
the patrol car; both Davis and appellant were distressed.

When Deputy Jones came back to the patrol car, Davis
told him several times that the marijuana belonged to her and not to appellant. 
Deputy Jones testified that only after Davis and appellant had spoken for about
45 minutes did Davis tell him that the marijuana the deputies found in
appellant’s purse did not belong to appellant.  Deputy Jones also testified
that appellant did not say anything about the marijuana; she only cried.

Deputy Max Martinez also testified at trial.  He
confirmed that he performed a traffic stop because Davis’s car remained at the
traffic light after two light cycles.  Deputy Martinez testified that he saw
Davis and appellant sitting slumped over in the car.  Both were asleep so he
knocked on the driver’s side window with his baton for about three to four
minutes until Davis woke up and opened the window.  Deputy Martinez testified
that the odor of marijuana was so strong that “it just hit [him].  It just
overwhelmed [him].  It was strong.”

Deputy Martinez asked Davis to step out of the car;
he also asked her if she had narcotics or anything illegal in the car.  Davis
denied having anything illegal in the car but, as she stepped out of the car,
Deputy Martinez saw a clear plastic bag containing marijuana on the driver’s
side door.  When Deputy Martinez inquired if Davis had any other narcotics in
the car, she again denied having anything illegal in the car.  Deputy Martinez
arrested Davis for possession of marijuana.

Deputy Martinez testified that appellant consented to
his retrieving her purse from the car; he found her purse on the passenger
seat.  Appellant also consented to the deputies opening her purse to retrieve
her identification.  As soon as Deputy Martinez opened appellant’s purse, he
recognized a bag containing marijuana in the purse; it had an “extremely
strong” odor of marijuana.  Deputy Martinez testified that the size of
appellant’s purse was smaller than a loaf of bread and that the marijuana was
immediately noticeable.  He testified that appellant never stated that the marijuana
was Davis’s and not hers; she “just stated that she couldn’t go to jail” and
“just kept saying that.”  

Deputy Martinez handcuffed appellant; told her he was
arresting her for possession of marijuana; and placed her in the back of the
patrol car.  While Deputy Jones was conducting an inventory of Davis’s car,
Deputy Martinez was standing next to the patrol car taking care of paperwork. 
Deputy Martinez testified that he could hear appellant and Davis talking in the
back of the patrol car.  Appellant “kept telling Miss Davis that she couldn’t
go to jail,” and Davis would lean over to appellant and whisper something. 
Davis asked Deputy Martinez if she could “take the whole blame and put the weed
on her.”  Deputy Martinez testified that neither Davis nor appellant ever
stated that the marijuana in appellant’s purse belonged to Davis. 

Appellant’s friend, Davis, also testified at trial.  Davis
stated that she had picked up appellant from work at the Legends club between 4
a.m. and 5 a.m.; she admitted that she and appellant were asleep in the car at
the traffic light.  Davis denied that Deputy Martinez knocked on her window but
claimed that she woke up because she felt the deputies’ presence.  According to
Davis, Deputy Martinez told her and appellant to get out of the car; placed
Davis and appellant in the back seat of the patrol car; searched Davis’s car
without her consent; found marijuana in the car and in appellant’s purse;
brought the marijuana to the patrol car; pulled appellant and Davis out of the
patrol car; and handcuffed them.

Davis testified that she immediately told the
deputies that the marijuana in appellant’s purse belonged to her and that she
had forgotten putting it there earlier in the day.  She testified that she was
not trying to help her friend.  Davis stated that she never heard appellant give
consent to the deputies searching appellant’s purse.  Davis also testified that
she did not know there was marijuana on the driver’s side door.  She admitted that
she was currently in jail because she had been convicted of possessing a
controlled substance weighing between four and 200 grams.

Analysis

In her first and second issues, appellant contends
that the evidence is legally and factually insufficient to support her
conviction for possession of marihuana weighing less than two ounces.

We address appellant’s sufficiency challenges under a
single standard for evaluating legal sufficiency of the evidence to support a
finding required to be proven beyond a reasonable doubt.  See Brooks v.
State, 323 S.W.3d 893, 895, 912 (Tex. Crim. App. 2010) (plurality opinion);
id. at 913-14 (Cochran, J., concurring) (concluding that a separate
factual sufficiency standard no longer applies in criminal cases).  That
standard requires us to determine whether, after considering all the evidence
in the light most favorable to the verdict, a jury was rationally justified in
finding guilt beyond a reasonable doubt.  Id. at 902 (plurality
opinion).

A person commits an offense if he knowingly or
intentionally possesses marijuana weighing two ounces or less.  Tex. Health
& Safety Code Ann. § 481.121(a), (b)(1) (Vernon 2010).  To prove
possession, the State must show the accused (1) exercised control, management,
or care over the contraband and (2) knew the substance possessed was
contraband.  Evans v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006);
Roberts v. State, 321 S.W.3d 545, 548 (Tex. App.—Houston [14th Dist.]
2010, pet. ref’d).  Possession may be proved through either direct or
circumstantial evidence. Poindexter v. State, 153 S.W.3d 402, 405-406
(Tex. Crim. App. 2005).

When the accused is not in exclusive possession or
control of the place where contraband is discovered, the State must show
additional facts and circumstances affirmatively linking the accused to the
contraband to show the accused’s knowledge of or control over the contraband.  Id.
at 406; Roberts, 321 S.W.3d at 549.  We consider the totality of the
circumstances when determining whether the accused is linked to the recovered
contraband.  Roberts, 321 S.W.3d at 549.  The accused’s connection with
the contraband must be “more than just fortuitous.”  Poindexter, 153
S.W.3d at 405-06.  Mere presence at the scene where contraband is found is
insufficient, by itself, to establish possession.  Evans, 202 S.W.3d at
162.  Presence or proximity, combined with other evidence or links may be
sufficient to establish the element of possession beyond a reasonable doubt.  Id. 
The number of links is not dispositive; establishing possession depends on the
logical force of all the evidence.  Id.  

The following non-exclusive “affirmative links” have
been recognized as sufficient, either singly or in combination, to establish a
person’s connection to contraband: (1) the accused’s presence when the search
was conducted; (2) whether the contraband was in plain view; (3) the accused’s
proximity to and the accessibility of the contraband; (4) whether the accused
was under the influence of narcotics when arrested; (5) whether the accused
possessed other contraband or narcotics when arrested; (6) whether the accused
made incriminating statements when arrested; (7) whether the accused attempted
to flee; (8) whether the accused made furtive gestures; (9) whether there was
an odor of contraband; (10) whether other contraband or drug paraphernalia were
present; (11) whether the accused owned or had the right to possess the place
where the contraband was found; (12) whether the contraband was found in an
enclosed place; (13) whether the accused was found with a large amount of cash;
and (14) whether the conduct of the accused indicated a consciousness of guilt. 
Id. at 162 n.12; Olivarez v. State, 171 S.W.3d 283, 291 (Tex.
App.—Houston [14th Dist.] 2005, no pet.).

Appellant argues that the evidence is insufficient to
support her conviction because (1) the “State provided no evidence that
appellant attempted to flee or made any furtive gestures when approached by the
police;” (2) the contraband was not in plain view, “but rather inside a purse
that belonged to Appellant but was apparently shared by” Davis; (3) the purse
was in Davis’s car; (4) appellant readily consented to Deputy Martinez
retrieving her identification from her purse, which she would not have done if
she had known marijuana was there; (5) there was no evidence that appellant had
large amounts of cash or other contraband and paraphernalia; (6) there is a
“distinct probability that [Davis and appellant] shared the purse and that
Appellant’s purse was in the vehicle earlier in the day when Davis placed the marijuana
in it;” (7) “no evidence established that Appellant was under the influence of
narcotics at the time of her arrest” because she only “admitted to smoking marijuana
several hours earlier, she did not admit to having recently smoked marijuana;”
(8) Deputy Jones testified that appellant seemed more sleepy than intoxicated;
(9) appellant made no incriminating statement regarding the marijuana; (10)
“Davis testified the marijuana found in the purse belonged to her and not to
Appellant; that she had placed the marijuana in Appellant’s purse earlier in
the day and forgotten it;” (11) there was conflicting testimony from the two
deputies because Deputy Jones testified that Davis repeatedly said the marijuana
belonged to Davis while Deputy Martinez “insinuated that Davis was attempting
to take the blame” for appellant; and (12) Davis denied taking the blame to
help her friend.

The jury heard testimony from Deputies Jones and
Martinez.  Both deputies testified that appellant and Davis were asleep at a
red traffic light and that it took several knocks to wake them up.  When Davis
rolled down the driver’s side window, the deputies immediately noticed a strong
odor of marijuana emanating from the car.  Deputy Jones testified that
appellant seemed to be sleepy and under the influence of marijuana.  Deputy
Jones testified that appellant stated she had been smoking marijuana three
hours earlier.  Yet, Davis stated that she had just picked up appellant from
work and Deputy Jones found marijuana ashes in the ashtray and “the middle part
of the vehicle.”

Deputies Martinez and Jones testified that appellant
consented to Deputy Martinez retrieving her purse from the car; appellant identified
her purse; and appellant consented to Deputy Martinez retrieving her
identification from her purse.  Upon opening appellant’s small purse, the
deputies immediately noticed marijuana wrapped in a bag the size of a
baseball.  Deputy Jones testified that it would have been impossible for
someone to look inside the purse and not notice the marijuana.  Deputy Martinez
testified that the marijuana in appellant’s purse was immediately noticeable
and that it had an “extremely strong” odor.  He stated that the marijuana was
so potent that “it stank up” his car months later when he transported it to an
earlier court setting.  Deputy Jones also testified that appellant did not act surprised
when the deputies found marijuana in her purse; never stated that the marijuana
they found in her purse did not belong to her; and made no comments about the marijuana.

Deputy Jones testified that he could hear appellant
and Davis speaking and yelling in the back of the patrol car while he was
conducting an inventory of Davis’s car.  When Deputy Jones concluded the
inventory and came back to the patrol car, Davis told him several times that
the marijuana the deputies found in the purse belonged to her.  Deputy Jones
testified that only after Davis and appellant had spoken for about 45 minutes
in the back of the patrol car did Davis tell him that the marijuana in
appellant’s purse belonged to Davis and did not belong to appellant.  He also
testified that appellant did not say anything about the marijuana; she only
cried.

Deputy Martinez confirmed that, when he found the marijuana
in appellant’s purse, appellant never stated that it belonged to Davis and not
to her.  According to Deputy Martinez, appellant “just stated that she couldn’t
go to jail” and “just kept saying that.”  After Deputy Martinez arrested
appellant, he could hear appellant and Davis talking in the back of the patrol
car.  Deputy Martinez testified that appellant “kept telling Miss Davis that
she couldn’t go to jail,” and Davis would lean over to appellant and whisper
something.  Davis asked Deputy Martinez if she could “take the whole blame and
put the weed on her.”  Deputy Martinez testified that neither Davis nor
appellant ever stated that the marijuana in appellant’s purse belonged to
Davis.  

Davis denied that she was trying to take the blame in
order to help appellant, and testified that she immediately told the deputies
the marijuana in appellant’s purse belonged to her and that she had forgotten
putting it there earlier in the day.  The jury was free to disbelieve her
testimony and free to believe the deputies’ testimony.  Further, the jury was
entitled to resolve any alleged conflict it might have perceived in Deputy
Martinez’s and Jones’s testimony regarding whether Davis had stated that the marijuana in appellant’s purse belonged to her.

In deciding whether the evidence is sufficient to
link the marijuana to appellant, the jury as the fact finder is the exclusive
judge of credibility of the witnesses and the weight to be given to their
testimony.  Poindexter, 153 S.W.3d at 406.  The jury must resolve
conflicts in the evidence and is free to accept or reject any or all of the
evidence presented by either side.  See Lancon v. State, 253 S.W.3d 699,
706 (Tex. Crim. App. 2008); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim.
App. 2000).  Based upon the verdict, the jury chose to disbelieve testimony indicating
that appellant did not possess the marijuana or know it was in her purse.  The
jury was in the best position to evaluate the credibility of the witnesses, and
we afford due deference to this determination.  See Marshall v. State,
210 S.W.3d 618, 625 (Tex. Crim. App. 2006).    

The absence of several links — no attempt to flee, no
furtive gestures, no large amount of cash, no other drug paraphernalia — is not
dispositive.  Each case must be determined on its own facts, and factors that
contribute to the sufficiency of the evidence in one situation may be of little
value under different facts.  Roberts, 321 S.W.3d at 552.  We conclude
that the links established by the evidence in this case are sufficient to
support a finding that appellant knowingly possessed the less than two ounces
of marijuana Deputy Martinez recovered.

Accordingly, we conclude that the evidence is
sufficient to support appellant’s conviction, and we overrule appellant’s two
issues.

Conclusion

We affirm the trial court’s judgment.








                                                                                                                                                                                                                                                

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

Panel consists of Justices
Brown, Boyce, and Jamison.

Do Not Publish — Tex. R. App. P. 47.2(b).

 

 









[1]
See Tex. Health & Safety Code Ann. § 481.121(a), (b)(1) (Vernon
2010).