# NO. 12-10-00136-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RUDOLPH TOMMY GILLIAM,* *APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Rudolph Gilliam appeals the revocation of his community supervision. In his sole issue, Appellant argues that the evidence is insufficient to support the trial court's revocation order. We affirm.

## BACKGROUND

Appellant was charged by indictment with the offense of aggravated robbery. He pleaded guilty pursuant to a plea agreement, and the trial court placed him on deferred adjudication community supervision for eight years.

On November 3, 2009, Tyler police officer Jeff Roberts stopped a vehicle for failing to have a license plate light. Appellant was seated on the passenger side of the vehicle and a female, Patricia Daniel, was seated on the driver's side. After marijuana was discovered in the center console of the vehicle, Appellant was placed under arrest and taken to the Smith County Jail. Subsequently, the State filed an application to proceed to final adjudication. In its second amended application, the State alleged that Appellant violated five conditions of his community supervision by (1) possessing a usable quantity of marijuana in an amount more than two ounces but less than four ounces; (2) operating a motor vehicle when his license was suspended; (3)

1

associating with a person convicted of prostitution; (4) possessing marijuana; and (5) failing to participate in the state drug or alcohol abuse continuum of care treatment plan. Appellant pleaded "not true" to the allegations in the State's motion to adjudicate.

After an evidentiary hearing, the trial court found that Appellant committed the first four violations. Accordingly, the trial court adjudicated Appellant guilty and assessed punishment of imprisonment for fifteen years. This appeal followed.

## REVOCATION OF COMMUNITY SUPERVISION

In his sole issue, Appellant argues that the evidence is insufficient to support revocation of his community supervision.

### Standard of Review

We review a trial court's order revoking community supervision under an abuse of discretion standard. *See **Rickels v. State***, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). In a community supervision revocation proceeding, the state has the burden of proving a violation of the terms of community supervision by a preponderance of the evidence. *See **Rickels***, 202 S.W.3d at 763-64; ***Cobb v. State***, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). The state meets its burden when the greater weight of the credible evidence creates a reasonable belief that the defendant violated a condition of community supervision as alleged. *See **Rickels***, 202 S.W.3d at 764; ***Jenkins v. State***, 740 S.W.2d 435, 437 (Tex. Crim. App. 1983). In a hearing on a motion to revoke community supervision, the trial court is the sole trier of fact, and is also the judge of the credibility of the witnesses and the weight to be given their testimony. ***Taylor v. State**,* 604 S.W.2d 175, 179 (Tex. Crim. App. 1980); ***Trevino v. State***, 218 S.W.3d 234, 240 (Tex. App.–Houston [14th Dist.] 2007, no pet.). Furthermore, on appeal, we examine the evidence in the light most favorable to the trial court's ruling. ***Garrett v. State**,* 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981); ***Duncan v. State***, 321 S.W.3d 53, 57 (Tex. App. –Houston [1st Dist.] 2010, pet ref'd). One single violation of the terms of community supervision is sufficient to support a trial court's order revoking community supervision. ***Sanchez v. State***, 603 S.W.2d 869, 871 (Tex. Crim. App. 1980); ***Moore v. State***, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980) (stating that one sufficient ground for revocation is enough to support trial court's decision); ***Cochran v. State***, 78 S.W.3d 20, 28 (Tex. App.–Tyler 2002, no pet.).

**Applicable Law**

In its application in this case, the State alleged two different violations for possession of marijuana. The first was that Appellant, by possessing "a usable quantity of marijuana in an amount of four ounces or less but more than two ounces," violated the condition that he "commit no offense against the laws of this state or of any other state or the United States." The second was that Appellant, by possessing marijuana, violated the condition that he "not use, consume, nor possess marijuana, any narcotic substance, controlled substance, or dangerous drug at any time except as prescribed by a medical doctor and taken in accordance with the medical doctor's prescription." Case law has established two different categories of violations: "new offense or new crime" violations and "technical" violations. *Coffel v. State*, 242 S.W.3d 907, 909 (Tex. App.–Texarkana 2007, no pet.). New offense violations involve the defendant's alleged criminal violation of Texas law. *Id*. Technical violations involve other conditions that have nothing to do with obeying "the laws of this state or of any other State or of the United States." *Id*. (quoting TEX. CODE CRIM. PROC. ANN. art. 42.12 §11(a)(1) (Vernon Supp. 2007)). Here, we will address only the second marijuana allegation, "simple possession," which does not relate to whether Appellant violated the law.[1]

The sufficiency of the evidence necessary to establish simple possession is analyzed under the same rules used in addressing the possession element of the criminal offense of possession of a controlled substance. *See Evans v. State*, 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006) (analyzing simple possession of controlled substance). To prove possession of a controlled substance, the state must show (1) that the accused exercised care, control, or custody over the substance, and (2) that the accused knew he possessed a controlled substance. *Id*. at 161; *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). When the accused is not in exclusive possession of the place where the substance is found, the state must show additional independent facts and circumstances that link the accused to the contraband in order to conclude that the accused had knowledge and control of the contraband. *Poindexter v. State*, 153 S.W.3d 402, 406

---

[1] Appellant argues that the "simple possession" violation is not shown because Texas law only prohibits possession of marijuana in a "usable quantity," and the evidence does not support a finding that the marijuana in this case is "usable." However, Appellant's counsel specifically stated at trial that the simple possession allegation "does not allege a violation of law because they don't allege a usable amount of marijuana, [the simple possession allegation] would be a violation of probation, even if it is not a violation of the law. The only difference in [the two marijuana allegations] is the [first one] alleges a new violation of law. . . . There is some difference in finding the defendant violated the law and, hence, his probation, and violated his probation."

(Tex. Crim. App. 2005). This "links" rule is not an independent test of legal sufficiency; it is merely a shorthand catch-phrase for a large variety of circumstantial evidence that may establish the knowing "possession" or "control, management, or care" of the contraband. *Evans*, 202 S.W.3d at 162 n.9.

A nonexclusive list of factors that have been found to be sufficient, either singly or in combination, to establish the legal sufficiency of the evidence to prove a knowing "possession" includes (1) whether the defendant owned or had the right to possess the place where the drugs were found; (2) whether the defendant made furtive gestures; (3) whether the contraband was in plain view; (4) whether the place where the drugs were found was enclosed; (5) whether the defendant was present when the search was conducted; (6) whether the defendant was in close proximity to the contraband; (7) whether the defendant had access to the contraband; (8) whether the defendant was found with a large amount of cash; and (9) whether the defendant made incriminating statements when arrested. *Id*. at 162 n.12; *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.–Houston [14th Dist.] 2005, no pet.). It is not the number of links that is dispositive, but rather the logical force of all of the evidence. *Evans*, 202 S.W.3d at 162. "In deciding whether the evidence is sufficient to link the defendant to contraband, the trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony." *Poindexter*, 153 S.W.3d at 405.

**Analysis**

We first note that the record contains conflicting testimony about the ownership of the vehicle in which the marijuana was found. Ms. Daniel, the other occupant of the vehicle, testified that the vehicle was Appellant's and that he drove it to pick her up the morning of the arrest. She stated further that she and Appellant drove around Tyler for the next twelve hours during which they stopped by a clothing store, went back to her apartment, went to a motel where they had sexual relations, and then drove to a fast food restaurant before being stopped. On the video made by the officer's in-car video camera, Appellant made conflicting statements concerning the ownership of the car, referring to the vehicle as "my car," "my dad's car," and "[Ms. Daniels's] car." Regardless of who owned the vehicle, Appellant was in the vehicle most of the day of the arrest, and the trial court reasonably could have found that, at a minimum, Appellant had the right to possess the vehicle.

Moreover, when Officer Roberts stopped the vehicle on the night of November 3, 2009, he

4

noticed "all kinds of furtive movements going on in the vehicle." He testified that when he approached the vehicle from the passenger side, where Appellant was seated, both occupants were breathing heavily and appeared very nervous. Officer Roberts became concerned and called for backup. Officer Roberts testified further that Appellant continued to make furtive movements by "moving his hands in different parts of the vehicle." According to Officer Roberts, he told Appellant multiple times to keep his hands where they could be seen. Officer Matthew Leigeber, also with the Tyler Police Department, arrived during the interaction between Officer Roberts and Appellant. He approached the driver's side, where Ms. Daniel was seated. Officer Leigeber testified that Appellant was making "a lot of furtive movements," reaching around, and was told repeatedly to show his hands.

Officer Leigeber also testified that the marijuana was plainly visible from his vantage point. He stated that when he had Ms. Daniel exit the vehicle, he saw a clear plastic bag with a green leafy substance he believed to be marijuana in the center console of the car between the passenger's and driver's seats. He stated further that the center console had a cover that opened like a door with the hinge on the passenger's side, but the door was open about two inches. Appellant had been sitting in the passenger's seat next to the console and was present when the marijuana was found.

Additionally, Appellant was in close proximity and had access to the marijuana. Officer Leigeber testified that the distance between where the marijuana was located and where a person would be seated in the front of the vehicle was "small." Officer Roberts testified that Appellant tried twice to reach with his left hand toward the center console of the vehicle.

Officer Leigeber testified further that when Appellant was searched, he had $633 in cash, which the officer testified was a fairly substantial amount of cash. Officer Leigeber also testified that Appellant made an incriminating statement in the back of the patrol car on the way to the Smith County Jail. The video made by the officer's in-car video camera shows Appellant asking why he is going to jail and Officer Leigeber responding that he was going to jail for possession of marijuana and driving with a suspended license. The trial judge concluded after watching the video that Appellant then asked "[w]here did my marijuana go?" Office Leigeber responded that "the other officer has it." The trial judge's opinion is consistent with Officer Leigeber's testimony about what he believed Appellant asked.[2]

---

[2] Appellant contended at the hearing that the statement was "[b]ut it wasn't my marijuana, though." On

Appellant points out, however, that the evidence shows Ms. Daniels admitted that the marijuana was solely hers. On the day after the arrest, Ms. Daniel signed a handwritten affidavit claiming ownership of the marijuana and stating that Appellant had no knowledge of it. At the hearing, Ms. Daniel testified that she was driving the car, the marijuana was hers, she placed it in the console, and Appellant did not know she placed it there. However, the trial court, sitting as finder of fact, is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Poindexter*, 153 S.W.3d at 405. The trial court did not find this testimony credible, which was within its prerogative as fact finder.

Keeping in mind the lesser preponderance of the evidence standard and viewing the evidence in the light most favorable to the trial court's order, we conclude that the evidence discussed above, coupled with the reasonable inferences from that evidence, provide sufficient logical force to establish that Appellant exercised actual care, custody, control, or management of the marijuana in the vehicle. *See Evans*, 202 S.W.3d at 166. Consequently, the evidence is sufficient to show that Appellant violated a condition of his community supervision based on his simple possession of marijuana. Therefore, we need not address his challenge to the sufficiency of the evidence to support the other alleged violations.[3] *Sanchez*, 603 S.W.2d at 871; *Moore*, 605 S.W.2d at 926; *Cochran*, 78 S.W.3d at 28.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered June 8, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*
(DO NOT PUBLISH)

---

appeal, he asserts that he asked "[w]here did my money go?" After reviewing the videotape, we find it impossible to determine, with any certainty, what Appellant asked the officer. Therefore, we defer to the trier of fact, who is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *See Poindexter*, 153 S.W.3d at 405.

[3] Appellant argues that we should decline to apply the "one violation" appellate rule because it introduces an element of arbitrariness to appellate adjudication. However, this rule, as set out in *Sanchez* and *Moore,* has not been overturned and has been applied consistently in Texas appellate courts on multiple occasions. Alternatively, he argues that if the court finds a violation, we are required to conduct a second analysis on whether the violation is "substantial." *See Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). The Texas Court of Criminal Appeals did not include this additional step in its analysis in either *Moore* or *Sanchez*, and we decline to do so here.